NEWEL W. CHERRY ET AL. v. J. W. SPEIGHT, EX'R, &c.

The 1st section of the IVth article of the Constitution of the United States reads as follows: "Full faith and credit shall be given in each State to the public acts, records, and judicial proceedings of every other State." (Paschal's Dig., p. 17, Note 101; Paschal's Annot. Const., p. 213, Notes 218, 219.)

A judgment rendered in another State against a defendant on personal service in his lifetime is not only sufficient, after his decease, to support an action against his personal representative in this State, but must, if not reversed or annulled, be held to be conclusive of all matters therein adjudicated, unless it be void for fraud.

But a judgment rendered in another State against an administrator of a decedent will not support an action against a personal representative of the decedent in this State, when it is not alleged that any assets which were formerly in the hands of the administrator in the other State have come into the possession of the representative in this State.

A mere technical inaccuracy in a claim as presented to an executor for allow-
ance, or in the description of the claim in the affidavit to it, will not justify
the executor in disallowing the claim, if the claim and affidavit as presented
show a valid liability against the testator. (Paschal's Dig., Art. 1310, Note
484.) The correctness of the ruling in the case of Taney v. Edwards, 27
Tex., 224, questioned, and the authority of that case disclaimed.

The effect which the courts of the State will give to an appeal from the judg-
ment of an inferior court of another State to the appellate tribunal thereof
is dependent, not upon the statutes or decisions of this State, but upon those
of the State in which the judgment was rendered and the appeal taken.
The courts of this State will give to the appeal the same effect upon the
judgment appealed from as would be given by the courts of such other State.

The effect of an appeal from the vice chancery courts of Mississippi to the
high court of errors and appeals of that State is not to annul or vacate the
judgment appealed from, but merely to suspend its execution pending the
appeal. If affirmed, the high court does not pronounce a new judgment,
but simply affirms that of the vice chancery court, which, though its exe-
cution was stayed during the appeal, was at all times a valid and subsisting
judgment, the affirmance of which operates to remove the stay of execution
interposed by the appeal. A judgment for damages rendered by the high
court of errors and appeals of that State, upon the affirmance of a judgment
wrongfully appealed from, does not affect the judgment affirmed or impair
its lien, but is distinct from it, and, in one sense, independent of it.

Hence, as in this case, where a claim against an executor in this State com-
prised both a judgment of the vice chancery court of Mississippi against his
testator on personal service, affirmed after the testator's death by the high
court of errors and appeals of that State, and also a judgment of said high
court for damages on the affirmance rendered against the representative in
Mississippi of the deceased testator, the judgment of the vice chancery court,
properly authenticated, constituted a valid claim against the executor in
this State; but the judgment of the high court, having been rendered after
the testator's death against his representative in Mississippi, and no assets
formerly in the hands of such representative being traced to the possession
of the executor in this State, does not constitute a valid claim against the
executor in this State.

On the case as above indicated, it was error for the court below to instruct
the jury, that if notice of a claim, valid in other respects, had not been
given to the representative of the estate in Mississippi within the time pre-
scribed by the statute of that State, the claim was barred against the ex-
ecutor in this State, as well as against the representative in Mississippi.

Though a foreign administrator cannot, in his fiduciary capacity, either
prosecute suits in this State to collect *choses* in action due his intestate,
or verify such claims against an executor or administrator in this State,
yet, when an administrator in another State has there recovered a judg-
ment *in personam* against a decedent whose estate and personal represen-

tative are in this State, such foreign administrator is competent to verify the judgment as a claim against the representative of the debtor in this State. The reason is, that the judgment has fixed the right in the administrator, who might sue on it in his own individual name and capacity.

APPEAL from McLennan. The case was tried before Hon. N. W. BATTLE, one of the district judges.

The main facts of this case are clearly stated in the opinion of this court.

The charges given to the jury by the court below, at the instance of the defendant, and which are held by this court to be erroneous, are as follows:

"1. If they believe from the evidence that Mark Pruitt was dead when the judgment was rendered by the high court of errors and appeals, as shown in the transcript from the vice chancery court at Fulton, the jury will disregard said transcript from the said vice chancery court altogether.

"2. The judgment against Albert G. Pruitt, administrator of Mark Pruitt, deceased, in Mississippi, affords no basis or cause of action against the legal representative of Mark Pruitt, in this State, because there is no privity between the said administrator in Mississippi and the defendant. And the fact that personal service was had on Mark Pruit does not affect or change this ruling, because the appeal to the high court of errors and appeals vacated and annulled the judgment of the vice chancery court at Fulton based upon such personal service, and the judgment of the high court of errors and appeals, being the final judgment, is not predicated upon the personal service of the deceased, but upon personal service upon his administrator, Albert G. Pruitt.

"3. If the jury believe from the evidence that there was, in the State of Mississippi, administration upon the estate of Mark Pruitt, deceased, after the recovery of said final judgment in the high court of errors and appeals; and further believe, that more than two years elapsed after

such administration, whether by an administrator or an executor; and they further believe from the evidence that the judgment here sued on was not, within said two years, presented for acceptance and payment to the administrator or executor, as the case may be, in accordance with the laws of Mississippi, as submitted in evidence; and the jury further believe from the evidence that the usual notice to creditors was published, as required by the laws of Mississippi, then the jury are instructed that the judgment here sued on is barred by the said laws of Mississippi, and is not a valid and subsisting claim against the estate of Mark Pruitt in said State, and cannot support a recovery in this State, because judgments have the same force and effect in every other State that they have in the State where they are rendered."

There was an agreement of parties that the plaintiffs were the owners of the judgment sued on, and that it was not barred by the three months' limitation of this State. The Code of Mississippi was in evidence, so far as it affected the matters in controversy.

There were verdict and judgment in favor of the defendant. The plaintiffs moved for a new trial, assigning misdirection of the jury by the court, refusal of charges asked by them, and that the verdict was contrary to the law and the evidence. The motion was overruled, and the plaintiffs appealed, assigning for error the same causes set out in their motion for a new trial.

*W. H. D. Carrington,* for the appellants.—There are really but three points in this case. They are—

I. Is the judgment sued upon, as evidenced by the records of the vice chancery court and the high court of errors and appeals, conclusive between the parties? That such is the fact, we refer to sec. 1, art. 4, Const. of U. S.; act of Congress of 29th May, 1796; Hernwagg v. Pawley, 5 Gill & Johns., 500; McElmagh v. Cohen, 13 Pet., 312;

Hampton v. McConnell, 3 Wheat., 234; Adams v. Rowe, 2 Fairf., 89; Pet. C. C., 74; Burell v. Briggs, 9 Mass., 462; 12 Mass., 25, 268; Norwood v. Cobb, 20 Tex., 588; 15 Tex., 500.

As to the effect of a suit upon record of judgment of Supreme Court, see Wilcox v. Kassick, 2 Mich., (Gibbs,) 165.

II. Was the lien of the judgment of the vice chancery court destroyed by the appeal?

That such is not the case, is very evident to any one versed in the decisions of our own Supreme Court. (Berry v. Shuler, from Caldwell, not reported, [25 Tex. Supp., 140;] Shapard v. Bailleul, 3 Tex., 26; 3 S. & M., 23, 213.)

It is true, there are some cases in Massachusetts, based upon the local statutory provisions of that State, to the converse of the proposition. (Stats. Mass. 1782, ch. 11; Stats. 1803, ch. 154.)

There is also a statute in Tennessee making judgments of a court of inferior jurisdiction, when appealed from, wholly inoperative. And there are some decisions under these statutes, but they do not affect the principle so frequently recognized by our own and nearly all the other courts of the Union, "that an appeal from an inferior to a superior court only holds the judgment of the inferior court for the time in abeyance. The lien of the judgment is only for the time suspended, and upon the dismissal of the appeal, or upon the affirmance of the judgment of the court below, all the liens acquired by the rendition of the first judgment are retained."

We know of no exceptions, except in cases dependent upon statutory provisions.

In Mississippi the rule is, the lien acquired upon the property of the defendant by the judgment of the chancery court extended to all the property, real and personal; and the removal by Mark Pruitt of his property to Texas was only an attempt to perfect that fraud upon

the child, which had its inception upon the death-bed of the father.

The rendition of the judgment operated as a lien upon all the defendant's (Mark Pruitt) property in the counties of Chickasaw, Tishemingo, Itawamba, and Monroe. (Hutch. Miss. Code, 776, act of February 26, 1842, sec. 2; Id., 894, act of March 5, 1846.) The opinion of Judge Sharkey, in the case of Planters' Bank v. Calvert, is conclusive. (3 S. & M., 192, 231.)

III. Was the plaintiff in the court below restricted in his remedy to the exhaustion of assets not *in esse*, supposed to be in the hands of the ancillary administrator?

It is evident he would finally have been compelled to resort to a suit against the executor or to have lost the debt.

The affirmance of the judgment of the vice chancery court related back to the date of its rendition. It occupied, after its affirmance, the same position it would have occupied if not appealed from.

In the case of Jones v. Jones' Heirs, 15 Tex., 463, the court impliedly says, if the judgment sued upon had been rendered in the lifetime of decedent's administrator, the action against the administrator in Texas would have been proper; but, as the judgment sued upon in that case was obtained against the administrator, the fact that personal service was had upon the deceased does not alter the fact that it was a judgment against an administrator, and the party was limited to assets in the hands of the ancillary administrator, &c. The personal service died with defendant.

It will hardly be insisted that the appeal in this case died with the defendant. If this should be insisted, we still have the judgment of the vice chancery court, obtained in the lifetime of defendant, Mark Pruitt, and he represented by the ablest counsel in the State of Mississippi.

It is true, at common law the death of appellant between date of appeal and assignment of errors abated the appeal,

but we do not insist that such are the facts in the case now before the court, although we believe there is no data to show that such is not the fact.

*N. G. Shelley,* also for the appellants.—In response to the position of the appellee as to the sufficiency of the authentication and presentation, we have to say: I. That any irregularity in the formalities of authentication and presentation were waived by the action of the executor in his rejection of the claim.

II. If not waived, then the defendant was precluded by the agreement of parties used on the trial, and a part of the record.

III. If not covered by both or either of the above, we say that the judgment in the vice chancery court was recovered by and in the name of W. C. Coopwood, administrator of John C. Cherry, deceased. That he, therefore, being a party to the record, being the owner in a fiduciary capacity of the judgment subject to be enforced by him for the benefit of the creditors, or heirs, if there were no creditors, was the proper party to authenticate by his affidavit the justness of the claim upon the judgment against the estate of Mark Pruitt, deceased.

The presentation of the claim was made by the heirs of John C. Cherry, deceased, through their agents and attorneys, and of their right to the claim the defendant is concluded by his agreement. It is shown and admitted that the right vests in them absolutely.

In the case of Cobb v. Norwood, 11 Tex., 556, the affidavit in the first instance, and the one in which the language of this court is sought to be used as authority in this case by appellee in support of his bill of exceptions, was made by Cobb, as the agent of foreign administrators, and the court says, that as such agent he had no authority to make the affidavit. It is not supposed that the court intended to say that any party, whether as agent, or otherwise, who

sustained such a relation to the claim or demand as to evidence their right or authority to control it, whether as beneficiary or in a fiduciary capacity, who was prepared, by being in possession of the requisite information, to make the affidavit of the justness and existence of the amount of the claim, after the allowance of all credits and offsets, might not do so, and so far prepare the claim for presentation in behalf either of creditors or heirs entitled to have and recover upon it.

Whose affidavit would be a sufficient authentication of the claim? What facts are necessary to be verified by the affidavit? That the claim is a just and legal one, is due and owing, and that all legal offsets and credits have been allowed.

It is the existence and verity of these constituents, in the evidence supporting the claim, which constitute the sufficiency of the authentication, rather than the person by whom the affidavit is made. The inquiry as to who made the affidavit, is pertinent only so far as to determine how far the affidavit afforded sufficient and satisfactory evidence of the truth of the essential facts contained in it. Hence, as in Cobb v. Norwood, Cobb, the agent, did not sustain such relation to the claim as to make his affidavit conclusive of the facts essential to its sufficiency. If W. C. Coopwood, who had recovered the judgment, who had been connected with the proceedings ripened into the judgments from their incipiency, who controlled and was responsible to creditors for the management of this claim as assets in his hands, could not make the necessary verification of the facts for its proper presentation against the estate of Mark Pruitt, it may be respectfully asked what other person could do so?

In the knowledge of what other person did the essential facts exist? Who of all others so well knew whether any portion of the claim had been paid; whether there were offsets to be made which had not been made; and of the

correctness and justice of the demand originally; and, finally, whose affidavit would be satisfactory and conclusive of the statements it contained, necessary to the proper authentication of the claim for presentation to the executor of Mark Pruitt, as a just and legal demand against the estate of his testator, as that of the party who prosecuted it to judgment against the testator in his lifetime, and who had been so intimately and closely connected with it to the date of its authentication? It is with all deference respectfully submitted, that the opinion of Mr. Justice LIPSCOMB, in Cobb v. Norwood, in so far as it may seem to deny the authority of a foreign administrator to verify a claim by his affidavit, is *obiter dictum*, and should not therefore govern in this case.

*T. D. Moseley*, also for appellants.

*Nowlin & Herring*, for appellee.—In this case appellee, by his counsel, contends that the instructions of the court below to the jury were correct; because—

I. A judgment against an administrator in one State of these United States furnishes no right of action against an administrator or heirs of the deceased in another State, to affect property which was not assets in the State where the judgment was obtained. And it makes no difference, as regards the principle, whether the deceased had resided in the State where the suit was commenced, and had been there duly served with process. (Stacy v. Thrasher, 6 How., 44; McLean *et al.* v. Meek, 18 Ib., 16; Aspden v. Nixon, 4 Ib., 467; Vaughan v. Northup, 15 Peters, 1; Story's Conf. of Laws, § 522; Jones v. Jones, 15 Tex., 463; 2 Rawle, 431.)

II. A judgment is evidence only between the parties and privies thereto. (2 U. S. Dig., Art. 779, p. 670; Copp v. McDougal, 9 Mass., 1; Perkins v. Pitts, 11 Ib., 125; Chase v. Hathaway, 14 Ib., 222; 1 Pick., 105.)

III. The judgment of the vice chancery court in Missis-

sippi became inoperative, null and void, when the appeal was consummated, and the judgment of the high court of errors and appeals became the only active, living, effective judgment. (Campbell v. Howard, 5 Mass., 376; Keene v. Turner, 13 Ib., 226; Pain v. Cowdin, 17 Pick., 142; Davis v. Cowdin, 20 Ib., 510; Penhallows v. Doane, 3 Dallas, 87, 119; 2 Sneed, 1; 3 Ib., 208.)

This doctrine of privity is fully examined and elucidated in the opinion of the court in the case of Stacy v. Thrasher, 6 How., before referred to, and also in the case of Jones v. Jones, 15 Tex., 463, in which case Justice WHEELER, after quoting from the opinion of the court in the case from 2 Rawle, 431, uses the following clear and emphatic language, viz:

"The argument of the court in this case seems to us unanswerable upon principle, and we are aware of no authority to the contrary. Indeed, it is evident a contrary doctrine might be productive of great abuse and wrong in practice, and cannot be maintained upon principle. We therefore conclude, that the judgment recovered against the ancillary administrator in Missouri gave no right of action against the administrator or the heirs in this State; and, consequently, that judgment was rightly given for the defendants."

In that case the suit was against the heirs of the deceased, into whose possession the assets in Texas had been surrendered. In that case no allegation was made that any property had come to the hands of the defendants, which was assets in the State of Missouri. In this case no such allegation is made; and it is a well-established principle of law, that a personal representative of a deceased person is responsible alone to the jurisdiction from which he derives his powers for a proper administration of his trust. The judgment in Mississippi having been appealed from, and afterwards judgment in the high court of errors and appeals having been rendered against the administrator of

the deceased, all privity was destroyed, and such judgment constituted no basis for an action against assets in the hands of a personal representative in Texas. The main ground upon which this principle is founded, as laid down in the books, is, that there is too much danger of collusion between the creditor and the administrator in the State in which the judgment is obtained. (Jones v. Jones, 15 Tex., 465; Lightfoot v. Berkley, 2 Rawle, 431.)

Now, we respectfully submit to the court if the same reason for the principle do not obtain and exist in the present case? A thorough examination of the record from the high court of errors and appeals in Mississippi will show the very highest and strongest evidence of collusion and fraud, and the statement of facts in this case, showing that Abner Pruitt had received all the property and effects sued for originally, and that, although there was an executor of the will of the deceased in Mississippi, (W. B. Wilks,) yet Albert G. Pruitt, son of the said Abner Pruitt, before the executor could qualify, sued out letters of administration, waived citation, &c., and suffered the judgment to be affirmed in the high court of errors and appeals. All these facts, we respectfully submit, point this out as one of the very cases intended to be guarded against by the principle invoked.

IV. The bar of the Mississippi statute of two years, requiring creditors to present their claims within that time or be forever barred, is an effectual defense to this action, because the claim was extinguished. (Story's Conf. of Laws, §§ 582, 582*a*, 582*b*, and note; Hutch. Miss. Code, 671, 681, Arts. 115, 116; Williams v. Preston, 3 J. J. Marsh., 605; 4 S. & M., 165; 5 Ib., 651; 7 Ib., 437; 1 Cush., 398.)

In support of appellee's first bill of exception, see Cobb v. Norwood, 11 Tex., 560.

MOORE, C. J.—At its May term, 1855, a judgment was
33—XXVIII

rendered in the vice chancery court at Fulton, in the State of Mississippi, in favor of William C. Coopwood, as administrator of the estate of John C. Cherry, deceased, against Mark Pruitt, appellee's testator, on personal service, for the sum of $4,918 20, with interest thereon from the 27th day of March, 1855. On the application of said Pruitt, the judgment of the vice chancery court was taken by appeal to the high court of errors and appeals for the State of Mississippi, and while the suit was pending on his appeal in said high court of errors and appeals, said Pruitt died, and, his death being suggested to the court, the appeal was revived in the name of Albert G. Pruitt, to whom administration of his estate had been duly granted in said State of Mississippi. On the 18th day of February, 1856, a judgment was rendered by said high court of errors and appeals against said Mark Pruitt in person, affirming said judgment of said vice chancery court, and at the same time rendering judgment, according to the conditions of his appeal bond, against said Mark Pruitt, and his surety on said bond, for the amount adjudged against him in said vice chancery court, together with damages and costs of suit. And on the 20th day of said month, the judgment of said high court of errors and appeals was duly certified by the clerk thereof to said vice chancery court. But afterwards, on the 4th day of February, 1858, by motion of said Coopwood in said high court of errors and appeals, of which the administrator of said Mark Pruitt was duly notified, said judgment of the 18th day of February, 1856, rendered by mistake against said Mark Pruitt in person, was corrected, and entered by an order, *nunc pro tunc*, against his administrator in his stead.

On the 10th of March, 1858, affidavit was made by said Coopwood, on a duly certified transcript of the proceedings in said suit from the records of said high court of errors and appeals, "that the amount contained in the foregoing transcript from the record of the high court of errors and

appeals at Jackson, in Hinds county, in said State of Mississippi, wherein deponent was defendant in error and Mark Pruitt was plaintiff in error, and revived in the name of A. G. Pruitt, his administrator, the amount of said decree being $4,918, with interest thereon from the 27th day of March, 1855, besides the further sum of $245 70 damages, rendered by said high court of errors and appeals of said State, as by said transcript appears, and the further sum of —, the costs recovered by this affiant as administrator, &c., are just and due, after allowing all legal offsets, payments, and credits known to affiant, and that said judgment and decree have not been paid off, satisfied, and discharged, in whole or in part." The transcript of the proceedings had in this suit, thus authenticated, was, on the 16th of September, 1858, presented to the appellee, as the executor of said Mark Pruitt, for allowance as a valid claim against his estate, whereupon he made on said transcript the following indorsement:

"'The undersigned, the executor of the estate of Mark Pruitt, deceased, rejects the whole of the within claim.

"SEPTEMBER 16, 1858.    J. W. SPEIGHT, Executor."

Subsequent to which the present suit was brought by appellants, claiming that they are entitled, as the sole heirs of said John C. Cherry, deceased, to a judgment against said appellee, as executor of said Mark Pruitt, deceased, for the amount due on said judgment set out in said transcript, which by amendment is appended to and made a part of their petition.

It is quite apparent, from the facts which we have thus briefly presented, that the proper determination of this case depends upon the question whether appellants' cause of action is founded upon the judgment of the vice chancery court or upon the judgment pronounced on the appeal by the high court of errors and appeals of the State of Mississippi. If it be upon the former, as the judgment was rendered in the lifetime of Pruitt on personal service, it is evi-

dently not only sufficient to support an action against his personal representative in the courts of this State, but must, not having been reversed or annulled, be held conclusive on all matters therein adjudicated, unless void for fraud; while, if it be simply the judgment of the high court of errors and appeals to which we are to look to find appellants' cause of action, beyond dispute it is not sufficient to enable them to maintain their suit. This judgment was given after Pruitt's death, is against his administrator in the State of Mississippi, and, as it is not alleged that any assets which were in his hands have come into appellee's possession, it cannot be made the foundation of an action to charge appellee as the personal representative of Pruitt in this State. (Jones v. Jones, 15 Tex., 463; Stacy v. Thrasher, 6 How., 44; McFearn *et al.* v. Meek, 18 Id., 44; Lightfoot v. Berkley, 2 Rawle, 431.)

The copy of the record upon which the affidavit verifying appellants' claim was made, and which was presented to appellee for allowance as their claim against the estate of appellee's testator, contains a complete transcript of the proceedings had in the suit, both in the vice chancery court at Fulton and in the appeal in the high court of errors and appeals. Although there may have been a technical or formal inaccuracy in the presentation of the claim, or the description of it in the affidavit, if the record showed a claim against the estate of his testator which should have been allowed by the appellee, and the facts stated in the affidavit were sufficient to authorize its allowance, it should have been acknowledged. This appears to have been the view which was properly taken of the question by the appellee; for, by his endorsement on the transcript, he says he rejects unconditionally the "whole of the within claim." We deem it therefore immaterial to inquire whether the language of the affidavit, if strictly construed, would not be held to apply more directly to the judgment of the high court of

errors and appeals than to that of the vice chancery court, or whether, if it were the intention to present for allowance the latter judgment, it would not have been more appropriate to have had the final proceedings of the high court of errors and appeals in the case transmitted to the vice chancery court at Fulton, and have presented a certified copy of the record from that court as evidence of the claim to be allowed. The claim was certainly not rejected for any technical reason of this sort. The entire proceedings in the suit in Mississippi were presented to appellee.

He no doubt rejected the claim upon the ground that the judgment of the vice chancery court had been vacated and annulled by the appeal, that this judgment after the appeal had no force and effect whatever, and that the judgment of the high court of errors and appeals could alone be looked to in determining the rights which appellants could claim from the adjudication of the matters in controversy in said suit. From the instructions given the jury, this is also evidently the view taken of the case by the District Court.

If the question were one which should be ruled by the laws of this State, or its construction by our own courts, it might be thought that some support at least was given to this position by the opinion of this court in the case of Edwards v. Taney, 27 Tex., 224. I avail myself, however, of the present occasion to say, that it was not intended by the court in that case to do more than to decide the question presented in the record then before the court, which was an action for malicious prosecution. The case was decided at a time when the court was compelled to dispose of the business before it in the absence of counsel, and without the aid of their investigation of questions upon which it was forced to act. I may also say, that subsequent reflection has led me to entertain some doubt as to the correctness of the doctrine recognized in this opinion, even in the character of cases to which I regarded it as limited when it was announced, and that I shall therefore

hold it open for re-examination when it shall be again presented to the court.

But the question in the case now before us is controlled neither by the statutes nor the decisions of this State. Its solution depends entirely upon the law of Mississippi. We must determine simply what force and effect these judgments have there. When this is ascertained, it is our duty to give them the same effect here. In our opinion, it is very clear, from the statutes and decisions of the courts of that State, that the appeal to the high court of errors and appeals did not vacate or annul the judgment of the vice chancery court. Pending the appeal, its execution was suspended. Its affirmance removed the impediment to its enforcement which the appeal interposed, but it was at all times a valid and subsisting judgment. The appeal stayed its execution merely, until its regularity and validity could be inquired into by the appellate court, but neither the appeal nor the decision of the high court of errors and appeals canceled or revoked it. Nor did that court pronounce a new judgment in its place and stead. It simply affirmed the existing and valid judgment of the vice chancery court, and gave the additional judgment which the law authorized in case of a wrongful appeal. But this additional judgment is not in lieu or substitution of the judgment of the lower court, which is adjudged to be affirmed, but is distinct from, and in one sense independent of it. By the laws of Mississippi, judgment liens are neither impaired nor taken away by an appeal, as in this case. (Planters' Bank v. Calvert, 3 S. & M., 143; Kilpatrick v. Dye, 4 Ib., 289; Montgomery v. McGimpsey, 7 Ib., 557; see also Thompson v. Kercheval, 10 Humph., 322; Furbu v. Carter, 2 Sneed, 1.)

In the case of the Planters' Bank v. Calvert, 3 S. & M., 212, Mr. Justice Thrasher, in delivering the final opinion of the court, says: "The constitution declares, that the high court of errors and appeals shall have no jurisdiction

but such as properly belongs to a court of errors and appeals. To a general, although not to a universal, extent, it is therefore a revisionary tribunal only. Its judgment of affirmance is, then, no more than a ratification of what has already been correctly done. It is of no higher dignity than the judgment it affirms, because it is merely confirmatory of it. And it is no satisfaction or extinguishment of it, because it is no payment, and adds to it no greater or more enlarged rights. Whatever rights, therefore, are acquired from the judgment below, are not altered by its affirmance.

"The lien which by law a judgment gives is a vested right, which was perfect at the date of the judgment below. It can be lost only by the act or consent of its beneficiary. The affirmance is but a repetition of judgment, and the damages thereon constitute but a penalty for the vexation of delay. They are incidents to the appeal, but not parts of the original judgment."

We are therefore of opinion, that the transcript of the record presented to appellee showed a valid claim against the estate of his testator, which should have been admitted and recognized by him for the amount adjudged in favor of said Coopwood, as the administrator of said John C. Cherry, by the decree of the vice chancery court at Fulton, but not for the amount adjudged against the administrator of said Pruitt by the high court of errors and appeals; and consequently the first and second charges given to the jury, at the request of the appellee, must be pronounced erroneous.

By the third instruction, also given at the request of appellee, it was incorrectly ruled, that unless notice of the judgment were given to the administrator of the estate of Pruitt, in Mississippi, within the time prescribed by the statute of that State barring claims, notice of which is not given to the representative of the estate as required by law, the judgment would likewise be barred as against the

estate of Pruitt in this State. On the argument of the case in this court, the counsel for appellee, with much frankness, admitted that this objection to appellants' right to a verdict was not well taken. It is therefore unnecessary for us to discuss the question presented by this instruction.

There was no error in overruling the objection that appellants' claim had not been properly presented to appellee for allowance against the estate of his testator, because the affidavit thereto had been made by William C. Coopwood, the administrator in the State of Mississippi of the estate of John C. Cherry, deceased. As a foreign administrator cannot as such prosecute suits in this State, to collect *choses* in action due his intestate, he cannot verify claims for the purpose of having them recognized or established against the administrator of the debtor. (Cobb v. Norwood, 11 Tex., 556.)

But in the case now before us the judgment upon which the action was brought was rendered in favor of Coopwood. The right fixed by it is vested directly in him. He might have brought suit upon the judgment in his own name. If it were not for the equitable power of our courts, the appellants could not bring the present suit in their own names.

The judgment is reversed, and the cause

REMANDED.