OLIVER T. HOPPER, Respondent, *v.* MARY C. HOPPER, as Executrix, etc., Appellant.

By the phrase "foreign executor," the mere non-residence of the individual holding the office is not referred to, but the foreign origin of the representative character; that is the sole product of the foreign law and, depending upon it for existence, cannot pass beyond the jurisdiction of its origin.

Where, however, ancillary letters testamentary have been issued to a foreign executor, as prescribed by the Code of Civil Procedure (§ 2695), he thereby acquires an official and representative character as executor here (§ 2702), and so, may sue or be sued in his representative character in this state.

An action may be brought here against an ancillary executor, as such, by a non-resident, at least when the cause of action arose in this state.

*It seems* that, even if upon recovery of judgment in such an action, the plaintiff may not enforce it against assets here, as to which *quære,* and must resort to the forum of original probate jurisdiction, his judgment would be at least *prima facie* evidence of indebtedness, and would bar the Statute of Limitations, which otherwise might apply.

The will of H., a resident of New Jersey, was admitted to probate in that state, and letters testamentary issued to the executrix who resided there. H. was at his death a member of a firm doing business in New York city. The executrix took out ancillary letters in this state. A creditor of H.'s firm, who resided in Georgia, brought this action against said executrix in her representative capacity, alleging the insolvency of the surviving members of the firm, and asking judgment for the amount of his claim. *Held,* that the action was maintainable.

Reported below, 53 Hun, 394.

(Argued January 14, 1891; decided January 27, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made May 6, 1889, which reversed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term and ordered a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Robert T. B. Easton* for appellant. This non-resident plaintiff had no standing in the courts of this state at common law against a foreign representative of a foreign estate. If

the plaintiff has now any standing therein, it must be by virtue of some statute. But our statutory law gives a non-resident plaintiff no standing in our courts. (Code Civ. Pro. §§ 2701, 2839; *Moyer* v. *Weil*, 1 Dem. 71; *Ordronaux* v. *Helie*, 3 Sandf. Ch. 566; *In re Coley*, 1 Redf. 407, 408.) The finding in this case is that there are no assets in this state. This is a New Jersey estate. The administration here was for "temporary purposes;" the assets have been transmitted. The power conferred by statute is given "simply to facilitate the collection of assets." (*Crum* v. *Bliss*, 1 Monthly Law Bulletin, 68; Code Civ. Pro. § 2700; *In re Butler*, 38 N. Y. 397; *Fox* v. *Carr*, 16 Hun, 440.) Although the defendant could sue by special statute, he could not be sued. (*Vaughan* v. *Northrup*, 16 Pet. 1; *Leonard* v. *Putnam*, 51 N. H. 247.) Here the claims of domestic creditors against foreign estates have been limited to suits in equity. (*Field* v. *Gibson*, 56 How. Pr. 232; 20 Hun, 274.)

*Horace Secor, Jr.*, for respondent. The court had jurisdiction of the person of the defendant in her official capacity as an ancillary executrix. Jurisdiction of the subject-matter is the power to deal with the general subject involved in the action. (*Hunt* v. *Hunt*, 72 N. Y. 217, 230; *Bosworth* v. *Vandewalker*, 53 id. 597; Redf. Sur. Pr. [2d ed.] 428, 429; *Noonan* v. *Bradley*, 9 Wall. 394; *Hopper* v. *Sage*, 112 N. Y. 530; *Lyon* v. *Park*, 111 N. Y. 351; *Butler* v. *Jarvis*, 117 id. 115; *Fox* v. *Carr*, 16 Hun, 434; *Johnson* v. *Wallis*, 112 N. Y. 232; *Cummings* v. *Banks*, 2 Barb. 602.) If we can maintain the action against the defendant by virtue of her ancillary letters, it is immaterial whether it is of legal or equitable cognizance; but we submit that it is an equitable action. (*Van Rensselaer* v. *Van Rensselaer*, 113 N. Y. 208; *Bell* v. *Merrifield*, 109 id. 202; *Voorhis* v. *Childs*, 17 id. 354, 362; *Richter* v. *Poppenhausen*, 42 id. 373; *Riper* v. *Poppenhausen*, 43 id. 68; *Hope* v. *Cole*, 55 id. 124; *Haines* v. *Hollister*, 64 id. 1.) Plaintiff's ability to enforce a judgment here has nothing to do with his right to prosecute the action, in order to

establish his claim, which was denied by the defendant. (Code Civ. Pro. §§ 1824, 2700; Redf. Sur. Pr. [2d ed.] 275; *Fox* v. *Carr*, 16 Hun, 439; *In re Hughes*, 95 N. Y. 55, 60; *Dewitt* v. *Buchanan*, 54 Barb. 31; *Robinson* v. *O., etc., Co.*, 112 N. Y. 315; 3 Redf. on Wills [2d ed.], chap. 1, § 2; *McCartney* v. *Bostwick*, 32 N. Y. 53, 64; Schouler on Adm. & Ex. § 179.)

FINCH, J. The last will of Inslee A. Hopper, a resident of New Jersey, was admitted to probate in that state, and letters testamentary issued thereon to defendant Mary C. Hopper. The testator had been engaged in business as a broker in connection with other parties in the city of New York, and the executrix, presumably because there were assets in this state, took out ancillary letters testamentary within our jurisdiction. The plaintiff was and is a resident of the state of Georgia. He had dealt with the firm in the city of New York, of which the testator was a member, and claimed as a result of that dealing that it became indebted to him in a large amount. Coming into this state and finding the executrix here clothed with testamentary authority under our law, and seeking to recover a debt which originated here, he brought this action against her in her representative capacity, alleging the insolvency of the surviving members of the firm, and asking judgment for the amount which he claimed to be due. He was defeated at the Special Term, but on appeal that judgment was reversed, and from that reversal the executrix appeals to this court.

Her counsel advocate here the doctrine which prevailed in the trial court: that the ancillary executor, by reason of the temporary purpose of his appointment and the restricted limitation of his duties, does not become a domestic executor liable to be sued here, and that the defendant who was a foreign executrix by the issue of her original letters, remained such notwithstanding her ancillary appointment in this state.

By the phrase "foreign executor" the courts never mean the mere non-residence of the individual holding the office, but the foreign origin of the representative character. That

is the sole product of the foreign law, and, depending upon it for existence, cannot pass beyond the jurisdiction of its origin. The individual may come here and acquire rights or incur liabilities which our tribunals will defend or enforce, but he can have no representative rights or liabilities since we recognize in him no representative character. The foreign executor may make a contract here which our courts will compel him to perform because it is his contract, but where it is the testator's only he cannot sue or be sued upon it, since the right or the liability is purely representative and exists only by force of the official character, and so, cannot pass beyond the jurisdiction which gave it. (*Johnson* v. *Wallis*, 112 N. Y. 230.) And thus it is not the residence of the executor out of the state which makes him a foreign executor, but the creation of his official character under and by force of a law foreign to our own. He may, nevertheless, become an executor and clothe himself with a representative character under our law and by force of an authority conferred within our jurisdiction. The provisions of the Code of Civil Procedure indicate when and in what manner. By the terms of section 2695 the surrogates having jurisdiction may, upon production of an exemplified copy of the foreign will and the foreign letters and probate, issue to the executor ancillary letters testamentary. He thereby necessarily acquires an official and representative character under our law, and becomes an executor here. In *Cummings* v. *Banks* (2 Barb. 602) he is correctly described as " an officer of our state acting under our laws." As a consequence he gains a standing in our courts which, in the character of foreign executor merely, was denied to him. Having thus become the lawful representative of the testator in our jurisdiction, he may sue in our tribunals as such representative. It seems to follow that in that character he may also be·sued. The courts are thrown open to him when he sues as an executor here representing the estate by our authority. He has become a domestic executor. Is he any the less so when some creditor of the estate sues him ? Before the Code and before the Revised Statutes the foreign executor who came into our

jurisdiction and intermeddled with assets here could be sued as executor *de son tort*. The law regarded him not as foreign executor, but as executor here, having made himself such by his own wrongful conduct. (*Campbell* v. *Tousey*, 7 Cow, 65.) Now that such remedy is abolished and a way opened for a rightful possession of assets founded on an official character granted by our law to the ancillary executor, the right to sue him in that representative character would seem to be still more certain and plain. I do not understand that to be denied where the plaintiff is a citizen of our own state, but only where he is a non-resident. What has been said allows of no such discrimination. The ground of the citizen's action is that the defendant is not a foreign executor whom he cannot sue, but an executor here whom he can sue. How is the defendant any the less an executor here because the creditor is a non-resident? Let us suppose that the transaction in New York upon which this suit was brought had been with the testator alone instead of with a firm of which he was a member; that the citizen of Georgia came here to settle up the account, and that the ancillary executor, claiming he was a debtor in the dealing, had sued him in our courts. Nobody doubts or disputes the right to do so. But can it then be true that, the balance being the other way, the non-resident cannot sue the ancillary executor to establish his claim? A non-resident may sue a domestic executor in this state beyond any question. Does it alter the rule that the domestic executor has become such by receiving ancillary instead of original letters. The Code provides (§ 2702) that all the provisions of its eighteenth chapter relating generally to Surrogates' Courts and proceedings therein, and to the rights, powers, duties and liabilities of an executor or administrator shall, with some minor exceptions, apply to a person to whom ancillary letters are granted, and thus puts him upon a level, so far as his official character is concerned, with the ordinary executors appointed by our courts.

Two things are said, however, as peculiar to the case of a non-resident plaintiff. One is that he must show some statu-

tory authority for the right to sue, and without it can have none. I do not think the right was ever denied where the cause of action accrued within our boundaries. Indeed it has been said that one non-resident may sue another in our courts for a tort committed abroad, so far as the question of actual jurisdiction is concerned, and that we simply decline the jurisdiction from motives of policy and convenience, not that we do not have it. (*Gardner* v. *Thomas*, 14 Johns. 134.)

The provisions of the Code do not originate but simply restrain the original jurisdiction. Thus it is provided by section 1780 that an action may be maintained against a foreign corporation by another foreign corporation or by a non-resident, " in one of the following cases only." The word " only" is inserted as a word of restriction, and implies a general jurisdiction purposely narrowed and restrained. (*Robinson* v. *Oceanic S. Nav. Co.,* 112 N. Y. 315.) One of the cases is where the action is for breach of a contract made within the state. And in the case last cited it was declared that permitting the suit irrespective of residence, where the cause of action arose here, is a rule of comity, of natural justice and of convenience. Why, when there is an executor here where the transaction arose and the witnesses are at hand, should we send the non-resident to New Jersey to sue the same person in the same representative character there ?

The answer made to that inquiry is the second position taken by the appellant and grows out of the restricted duty enjoined upon the ancillary executor. He must remit all collected assets to the original probate jurisdiction, unless there are creditors who are citizens of our own state, in which event a distribution may be ordered here. (Code, §§ 2700, 2701.) And it has been doubted whether a creditor, not a citizen of this state, can prevent such transmission or obtain any relief against the assets here. (*Moyer* v. *Weil*, 1 Dem. 71.) While I feel the force of that doubt, I am unwilling to yield to it as in all cases conclusive. But assuming that to be the truth, the argument is that a judgment against the ancillary executrix would have no possible force or effect, and our courts do not sit to decide a mere

abstract question or perform an idle ceremony. If the judgment is utterly ineffective, at least the defendant may view its recovery with equanimity; but it is not ineffective, as the General Term points out. While we are not required for present purposes to decide upon its legitimate force and effect, and that question should be left until it arises, it is enough to say that the judgment may avail the plaintiff in two directions, even if it were certain that he could not reach assets here. If he should be driven to the forum of original probate jurisdiction, the case of *Hill* v. *Tucker* (13 How. [U. S.] 458) indicates that the judgment would be at least *prima facie* evidence of the indebtedness and, if not conclusive, would at least bar the Statute of Limitations, which otherwise might apply. In that case the testator, a resident of Virginia, died in that state, leaving a will, by which he appointed two residents of Virginia and two of Louisiana executors. The will was proved in both states, the Virginia executors taking out letters there, and one of the Louisiana executors qualifying in that jurisdiction. In a suit against the latter by a creditor who had obtained judgment in Virginia against the executors there, the Federal Court held the judgment admissible, and an answer to the Statute of Limitations. Much more would it seem to be true where the executors in the two jurisdictions were not different persons, but the same individual who himself in his representative character had appeared and defended in the one jurisdiction, that in the other, the judgment would at least *prima facie* establish the claim and answer a plea of the Statute of Limitations. And so, while we do not feel bound to determine at present the precise force and effect of the judgment, we are satisfied that its recovery ought not to be defeated on the ground that it is ineffective for any purpose.

The judgment of the General Term should be affirmed and judgment absolute on her stipulation be awarded against the defendant, with costs.

All concur.

Judgment affirmed and judgment absolute in favor of plaintiff on stipulation.