[Civ. No. 715.   Second Appellate District.—December 2, 1909.]

## V. W. A. RICHARDS, Respondent, v. ROBERT P. BLAISDELL, Administrator, etc., of the Estate of WILLIAM K. BLAISDELL, Deceased, Appellant; RACHEL E. VAN NEST et al., Interveners, Appellants.

ESTATES OF DECEASED PERSONS—JUDGMENT ON CLAIM IN ANOTHER STATE—CONSTRUCTION OF CODE—COMITY.—The rule declared in section 1913 of the Code of Civil Procedure, that "the effect of a judicial record of a sister state is the same in this state as in the state where it was made, except that it can only be enforced here by an action or special proceeding, and except also that the authority of a guardian or executor does not extend beyond the jurisdiction of the government, under which he was invested with his authority," in its general provisions, declares only the rule at common law based on comity.

ID.—EXCEPTION—ALLOWED CLAIM NOT EVIDENCE IN ANOTHER STATE.— Independent of the effect of the last stated exception in the code rule, the allowance of a claim against an administrator in one state is not conclusive, nor any evidence, against an administrator in another.

ID.—JUDGMENT ON CLAIM NOT AN ESTOPPEL—DEBT NOT PROVED PRIMA FACIE.—The laws and courts of a state can affect only persons and things within its jurisdiction; and both as to an administrator and the property confided to him in another state, a judgment establishing a claim against him as to that property is *res inter alios acta,* and is not even *prima facie* evidence of a debt in this state, and cannot operate by way of estoppel in administration had concerning real property situated in this state.

ID.—PERSON EXERCISING ADMINISTRATION IN THIS STATE IMMATERIAL. It is immaterial, as respects the effect of a judgment establishing a claim in another state against property there situated, whether the administrator in this state be the same or a different person from the one appointed in such other state.

ID.—RULES OF COMMON LAW AS TO SUCCESSION—INAPPLICABLE IN THIS STATE.—The rules of the common-law system distinguishing between real and personal property in the matter of descent to the heirs do not prevail in this state, where all property, real and personal, descends to the heir, subject only to the right of the personal representative under statutory authority to administer thereon, for the protection of local creditors and claimants.

ID.—THEORY OF JUDGMENT IMMATERIAL AS BASIS OF CLAIM IN THIS STATE.—The judgment establishing a claim in another jurisdiction

cannot be the basis of a claim in this state, whether it be considered *in rem* against the assets in such jurisdiction, or *in personam* against the executor, payable only out of such assets.

Id.—Original Debt not Presented.—The original debt cannot be considered as a claim where it was not presented as such, and the claim is based upon the judgment alone as binding in our courts, without any averment or showing that the personal property in the other state has been exhausted, or that there is any personal property in this state, it appearing that there is no property other than real property therein.

Id.—Insufficient Affidavit of Claim.—An affidavit accompanying the judgment as a claim, merely stating "that such claim is due and unpaid, and that there are no offsets to the same, and no credits thereon," entirely lacks some of the most important elements of the statutory requirement that the claim should state, "that the amount is *justly* due, that no payments have been made thereon, which are not credited, and that there are no offsets to the same to the knowledge of the affiant."

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. Curtis D. Wilbur, Judge.

The facts are stated in the opinion of the court.

Sam L. Baker, and W. C. Batcheller, for Appellants.

Cryer & Tuttle, for Respondent.

TAGGART, J.—This is an action on a claim reduced to judgment against an executor in the probate court in Minnesota, the testator's domicile, and rejected by the ancillary administrator with the will annexed in this state.

Judgment was for plaintiff, and defendants and interveners appeal from the judgment and from an order denying their motion for a new trial.

William K. Blaisdell died testate in the state of Minnesota, being a resident of that state at the time of his death. He left estate in Minnesota and also in California, that in the latter state consisting of real property only. Letters testamentary on his will were issued by the probate court of the state of Minnesota to the person named as executor therein. Thereafter letters of administration, with the will annexed, on his estate were granted to the defendant, Robert

P. Blaisdell in the state of California. Plaintiff presented his claim to the executor in Minnesota, who refused to approve or allow the same, whereupon the matter of such allowance and the exceptions of the executor to the claim were heard before the probate court having jurisdiction of the estate, and an order of allowance made by that court. This order, under the laws of the state of Minnesota, has the same force and effect as a judgment of a court of general jurisdiction.

After the rendition of this judgment and also after the time for presentation of claims in California had expired, the plaintiff presented to the administrator with the will annexed in California his claim in the following language: "Jan. 9, 1904. To amount of claim allowed and entered by the probate court of Hennepin county, Minnesota, by a certain judgment duly given, made and entered, as appears by the authenticated record of said judgment which is attached (and said probate court of Hennepin county, Minnesota, being a court of record and of general probate jurisdiction)—$2,448." Annexed to this claim were copies of the several papers which composed what may be designated the judgment-roll in the proceeding in the Minnesota court, to wit: The original demand—a promissory note for $1,800, with interest— the objections thereto, filed by the executor, and the judgment or order allowing the claim. It was also accompanied by an affidavit showing that plaintiff was a resident of Minnesota at all times when the administration in this state had been pending, and had never been in the state of California, and had no knowledge of the proceedings being taken, or of the notice to creditors of said estate given in California. The claim was also verified, the verification reading as follows: "That said claim is due and unpaid, and there are no offsets against the same, and no credits thereon."

The claim was rejected by the local administrator, and hence this action. Defendant and interveners plead that the claim and original demand were both barred by the statute of limitations, to wit, by sections 1493, 1499, 353 and 339 of the Code of Civil Procedure, that the testator was released from the original demand by a discharge in bankruptcy, and that the action is barred because the original indebtedness was secured by a mortgage on real estate in Minnesota,

which security was not exhausted, and the claim being rendered void by the provisions of sections 726 and 1497, Code of Civil Procedure. The indebtedness of the testator on the original demand was also denied; and evidence was introduced upon all the issues so raised, except that relating to the mortgage, evidence of which was refused admission.

On the issues so raised the trial court found in favor of plaintiff, setting out in full the instruments and orders attached to the claim, and found that the order of the probate court of Minnesota allowing the claim had the force and effect of a judgment, that no decree of distribution had been entered in the California administration at the time plaintiff's claim was presented, and that the affidavit attached to the claim made a satisfactory showing to the court that plaintiff did not have notice to present his claim by reason of absence from the state of California; that the promissory note in question was not scheduled in the bankruptcy proceedings by said William K. Blaisdell, and plaintiff had no knowledge of the bankruptcy proceedings until after the order had been made discharging Blaisdell from all his provable debts.

The conclusion of law of the trial court, based upon these findings, "that the certified copy of the record of such allowance of said claim in Minnesota, duly verified, constitutes a valid claim against the estate of William K. Blaisdell, in California," is challenged by appellants, who also raise the same question of law upon their objection to the admission of the Minnesota record in evidence.

Under the code, "The effect of a judicial record of a sister state is the same in this state as in the state where it is made, except that it can only be enforced here by an action or special proceeding, and except, also, that the authority of a guardian or committee, or of an executor or administrator, does not extend beyond the jurisdiction of the government under which he was invested with his authority." (Code Civ. Proc., sec. 1913.)

In its general provisions the section cited declares merely the rule at common law based upon comity. This is stated in Chitty on Contracts, eleventh American edition, volume 2, page 1177: "But the rule may now be taken to be, that if a

question has been decided by such a court (a foreign court having jurisdiction), in a proceeding *in personam,* between parties properly brought before it, this will preclude an inquiry in our courts between the same parties into the merits of the case upon the facts so found.'' (*Banister* v. *Campbell,* 138 Cal. 455, 459, [71 Pac. 504, 506].)

Independent of the effect of the exception in the section, which restricts the jurisdiction of executors and administrators to the territory of the government which invested them with authority, it appears to be the settled rule that the allowance of a claim by an administrator in one jurisdiction is not only not conclusive against an administrator in another, but it is not even evidence. The laws and courts of a state can only affect persons and things within their jurisdiction. Consequently, both as to the administrator and the property confided to him, a judgment in another state is *res inter alios acta.* It cannot be even *prima facie* evidence of a debt, for if it have any effect at all it must be as a judgment, and operate by way of estoppel. And this is true whether the person appointed administrator be the same or a different person .in both jurisdictions, and is true, also, in an action against any other person having assets of the deceased in a jurisdiction other than that in which the letters were granted. (*Cherry* v. *Speight,* 28 Tex. 503, 516; *McLean* v. *Meek,* 18 How. (U. S.) 16; *Johnson* v. *Powers,* 139 U. S. 156, 159, [11 Sup. Ct. 525]; *Stacy* v. *Thrasher,* 6 How. (U. S.) 44, 61.)

In *Stacy* v. *Thrasher,* the United States supreme court considers the question of how the ''faith and credit'' clause of the constitution of the United States and act of Congress are affected by such a construction, and says: ''The answer is that it [the foreign allowance of, or judgment against, an administrator] is evidence, and conclusive by way of estoppel, first, between the same parties; second, privies; and on the same matter where the proceeding is *in rem.* But the parties to these judgments are not the same. Neither are they privies. The term 'privity' denotes mutual succession or relationship to the same rights of property. The argument to sustain the view of privity seems to be this: 'That the judgment against the administrator is against the estate of the intestate, and that his estate, wheresoever situate, is liable to pay his debts; therefore the plaintiff having once estab-

lished his claim against the estate by the judgment of a court, should not be called on to make proof of it again.' This argument assumes that the judgment is *in rem* and not *in personam,* or that the estate has a sort of corporate entity and unity. But this is not true either in fact or in legal construction. The judgment is against the person of the administrator, that he shall pay the debt of the intestate out of the funds committed to his care. If there be another administrator in another state, liable to pay the same debt, he may be subjected to a like judgment upon the same demand, but the assets in his hands cannot be affected by a judgment to which he is personally a stranger. A judgment may have the 'effect' of a lien upon all the defendant's lands in the state where it is rendered, yet it cannot have that effect on lands in another state by virtue of the faith and credit given to it by the constitution and act of Congress.''

The Massachusetts court says the doctrine of the supreme court of the United States appears to be, that there is no privity between executors or administrators appointed in different jurisdictions, and the only exception is in the case where executors are appointed in different states by the same will. To support the exception, the case of *Hill* v. *Tucker,* 13 How. (U. S.) 458, which is relied upon by respondent here, is cited. Considering the question here before us, and applying to it that which it declares to be the general rule of the United States court to a judgment obtained against an ancillary administrator with the will annexed in Vermont, which it was sought to enforce against the executor of the domicile holding letters in Massachusetts, the supreme court of the latter state says: ''But it is said that they are in privity with the testator and that this creates a privity of estate between them. It is true that the executor is in privity with the testator in respect to the estate which he takes, which is merely the estate in Massachusetts and within the jurisdiction of its courts; and the administrator is in privity with the testator in respect to the estate in Vermont which he can administer upon. But as the privity relates to different property, and different matters, and is limited to different jurisdictions, it does not aid the plaintiff. There is no privity between the estate in the hands of the executor and that in the hands of the administrator.'' (*Low* v. *Bartlett,* 8 Allen, 259.)

The one case cited by respondent which is in direct conflict with the decision in *Low* v. *Bartlett* is that of *Latine* v. *Clements,* 3 Kelly (Ga.), 426. In that case the Georgia court bases its decision on the following reasoning: The executor derives his powers from the will, his duties are not imposed by law and his powers are not derived from the ordinary, but are delegated to him by the testator; and administrator *de bonis non* is the successor and privy of the executor and necessarily of the testator, and therefore, "all this is eminently true of the administrator with the will annexed." The decision also discusses the matter of privity in the manner following: After quoting from Greenleaf the same definition of "privity" upon which the United States and Massachusetts courts predicate their conclusions, to wit: "The term 'privity' denotes mutual and successive relationship to the same rights of property," the learned judge writing the opinion says: "The authority to act flows, in either case, from the testator. Now, the executor is in privity with the testator; so is the administrator with the will annexed, and if both are in privity with the common testator, it is difficult to imagine that they are not in privity with each other."

The reasoning in the United States and Massachusetts decisions seems to be more in harmony with the decision of our own court and the language of our statute. The decisions in the other cases cited by respondent in support of the action of the trial court are all to be distinguished from the case before us, if they are not, by reason of the premises upon which based, inapplicable in this state. *Hill* v. *Tucker,* 13 How. (U. S.) 458, was a Louisiana case in which it was held that where the same person was appointed executor in Virginia and Louisiana, a judgment obtained against him as executor in Virginia was admissible in evidence in Louisiana to show that the demand was prosecuted to judgment in Virginia, for the purpose of meeting a plea of the statute of limitations upon the original cause of action. It also appeared that the reason why the action was permitted in Louisiana was because the estate was exhausted in Virginia without payment of the claim.

*Hopper* v. *Hopper,* 125 N. Y. 400, [26 N. E. 457], rests upon the case of *Hill* v. *Tucker,* and holds that a New Jersey executor becomes in effect a domestic executor in the state of New

York when he also takes out letters testamentary in the latter state, and that as such he may be sued by a nonresident creditor. The court says it would not be idle for the nonresident creditor to sue in the ancillary jurisdiction as, under the authority of *Hill* v. *Tucker*, while the judgment obtained will not be conclusive, it might be *prima facie* evidence to answer a plea of the statute of limitations. The New York court expressly declines to decide the question, whether such a creditor would be entitled to be paid in the New York administration, or be relegated to New Jersey to await the return to the domiciliary administration of the balance left after the payment in full of the New York creditors from the New York assets.

*Garland* v. *Garland,* 84 Va. 181, 189, [4 S. E. 334], which also relies on *Hill* v. *Tucker,* holds that a decree against the domiciliary executor of a decedent may be enforced against an administrator *de bonis non* in any jurisdiction. In *Turley* v. *Dreyfus,* 33 La. Ann. 885, the same person named as executor obtained letters testamentary in two states, and it was held that a judgment obtained against him as executor in one state could be enforced against the administrators *de bonis non* who succeed upon the death of the executor to the administration in the other jurisdictions. This case is much weakened as an authority by the fact that upon another hearing of the matter the chief justice dissents from this part of the decision, and holds that the judgment obtained in the other jurisdiction (Tennessee) was not binding upon the executor or real estate in Louisiana (35 La. Ann. 514). The Wisconsin case cited rests upon such a peculiar state of facts as to render it of no assistance in determining the question before us. In *Carpenter* v. *Strange,* 141 U. S. 87, [11 Sup. Ct. 960], the action was against the same person acting as executrix, and if not sufficiently distinguished by that circumstance alone, it is by the fact that the action was one to establish a constructive trust, rather than an action on a creditor's claim against the estate. (See *Elizalde* v. *Elizalde,* 137 Cal. 634, [66 Pac. 369, 70 Pac. 861].)

In support of the view adopted as between administrators in different states see, also, *Churchill* v. *Boyden,* 17 Vt. 319, 322; *Rosenthal* v. *Renick,* 44 Ill. 202; *McGarvey* v. *Darnall,*

134 Ill. 367, [25 N. E. 1005] ; *Smith* v. *Goodrich,* 167 Ill. 46, [47 N. E. 317] ; *Hatchett* v. *Berney,* 65 Ala. 39, 49; *Durston* v. *Pollock,* 91 Iowa, 668, [60 N. W. 221] ; *Brodie* v. *Bickley,* 2 Rawle (Pa.), 431; *Barry's Appeal,* 88 Pa. 131; *Aspden* v. *Nixon,* 4 How. (U. S.) 467, 497.

The decisions which are rested upon the doctrine of privity between the executor in one jurisdiction and the administrator with the will annexed in another are the natural deductions from the rules of succession and administration at common law. By the common law the title to the personal property vested in the executor, while that of the real estate vested in the heir. At first it was held under the English rule that the executor of the domicile was charged with the collection of the personal assets from all parts of the world, and the corresponding duty of paying all the debts of the estate was imposed upon him. Either in person or by representative he was required to act in every jurisdiction in which personal assets of the decedent were to be found. His powers were derived from the will, and those of the administrator with the will annexed, who acted in his behalf, were also derived from the will through him, and, as the Georgia court said, it is difficult under such conditions to imagine that they are not in privity with each other. But even in England this rule was relaxed until the executor in the domicile was held responsible only for such of the estate as was there located and such as otherwise came into his possession, and the ancillary administrator came to be entitled to, and chargeable with, all the personal property having its *situs* within his jurisdiction. Some of the litigation in the cases examined arose through the attempt of nonresident creditors in one jurisdiction to subject the real estate of the heir in another to the payment of their debts, while in others the contest arose between the personal representatives in the different states. The question of privity became of importance and the rights of the respective parties were determined, as we have said, with relation to the common-law rules of succession. Owing to a failure to always distinguish between the right of action of one executor or administrator as against another executor or administrator, and the right of such executor or administrator against the heirs in another jurisdiction, the decisions even in common law are not all in harmony.

These rules evolved under the common-law system have never prevailed in this state, where all the property, real and personal, descends to the heir, subject only to the right of the personal representative, under statutory authority, to administer thereon. Here the executor or administrator takes possession of all the estate of the deceased for the purpose of administration. (Code Civ. Proc., sec. 1581, and Civ. Code, sec. 1384.) All property is chargeable with the decedent's debts, there being no priority between the personal and real property in its application to this purpose. (Code Civ. Proc., sec. 1516; *Murphy* v. *Crouse,* 135 Cal. 14, [87 Am. St. Rep. 90, 66 Pac. 971].)

This local administration is provided for the protection of local creditors and claimants. No state should allow property to be taken from its borders until debts due its own citizens have been satisfied. Our statute provides for administration upon the estate of any nonresident who has died leaving property in this state. To obtain such letters it is not necessary to show that there are creditors or that the property requires care to preserve it, and the law provides a mode for ascertaining whether there are any local creditors after the administration is begun. The administration, though called ancillary to distinguish it from the administration of the last residence of the decedent, is wholly independent of it. Only the surplus remaining after full administration can be remitted to the domiciliary representative for distribution. (See Code Civ. Proc., sec. 1667.) Whether there are any local creditors can only be determined by giving the notice to creditors required by the law of this state. (*McCully* v. *Cooper,* 114 Cal. 263, [55 Am. St. Rep. 66, 46 Pac. 82].)

In holding that the will of a resident of California cannot be admitted to probate in this state as a "foreign will" after it has been probated in another state, our supreme court declares: "Every state has plenary power with respect to the administration and disposition of the estates of deceased persons as to all property of such persons found within its jurisdiction. By the comity under which full faith and credit is to be given to judicial proceedings of sister states, it was never intended that the state should part with any of its sovereign rights, with any of its rights of primary juris-

diction, nor with any rights of its subjects, to have the will of a fellow-resident originally proved in the county of his residence, where, presumptively, he is the best known, and where they may the better litigate all questions touching the validity of the solemn instrument offered for probate.'' (*Estate of Clark*, 148 Cal. 108, 112, [113 Am. St. Rep. 197, 82 Pac. 760].) In the decision of this case the court says: "It would be said with exact truth that the full faith and credit which is accorded to the adjudications of sister states is a full faith and credit consonant with complete jurisdiction and control of the sovereign state over all its inhabitants, and over all the property within its boundaries.''

Other cases tend to assert for, and afford to, the local creditor the same protection and preference over foreign creditors that the Clark case does to the persons locally entitled to the estate of the deceased upon distribution. (See *Estate of Apple*, 66 Cal. 432, [6 Pac. 7]; *Estate of Ortiz*, 86 Cal. 306, [21 Am. St. Rep. 44, 24 Pac. 1034]; *Fox* v. *Tay*, 89 Cal. 339, [23 Am. St. Rep. 474, 24 Pac. 855, 26 Pac. 897].) In one instance this is extended far enough to declare that a foreign domiciliary executor has no power against an ancillary administrator with the will annexed, in this state, to sell and assign certificates of stock in a national bank located in this state, notwithstanding the certificates of stock were in the possession of the deceased and came into the hands of the foreign executor. (*Murphy* v. *Crouse*, 135 Cal. 14, [87 Am. St. Rep. 90, 66 Pac. 971].) An inspection of the sections of the Code of Civil Procedure relating to probate matters justifies no distinction between an executor or administrator with the will annexed, and a general administrator in respect to the effect of the allowance of, or a judgment establishing, a probate claim in a foreign state.

Considering the effect of section 1913, Code of Civil Procedure, upon the judgment of the Minnesota court in the light of the rule declared by the cases above reviewed, if it be held that the exception therein as to executors and administrators has no bearing, we are still of the opinion that the judgment is not only not conclusive upon the California administrator with the will annexed, but that it cannot be the basis of an action against him, or even evidence to establish the indebtedness. This is the result whether we accept the implied

view of some of the cases that a proceeding to establish a claim against an estate is a proceeding *in rem* having for its *res* the assets of the estate within the jurisdiction where presented, as distinguished from the entire estate, or the theory of the United States supreme court, that an action to establish a claim is *in personam* against the executor or administrator in the jurisdiction in which brought, which can be made payable only out of the assets of the estate in that jurisdiction.

It is to be borne in mind that the original indebtedness is not presented here. The claim is based upon the judgment and the right to present the original indebtedness is not before us. This distinction is drawn because the issues made by the pleadings, the defenses interposed to the claim, and the evidence introduced might be construed to have also submitted to the trial court defenses admissible only upon the theory that it was the original indebtedness·which was under consideration. These, however, were presented on the issue that the claim was illegally allowed in Minnesota.

If this matter were considered by us upon the theory that is advanced by respondent to sustain the judgment, to wit, that by reason of the provisions of section 1356, Code of Civil Procedure, a privity exists between the executor in Minnesota and the administrator in California, the plaintiff has failed to establish his right to recover against the assets in the latter state. If there be privity, it must be in the enforcement of the provisions of the will; by these the payment of debts is charged upon the personal property first, and only when this is found insufficient to pay the debts is resort to be had to the real estate, and by our code the property of a testator is to be applied to the payment of his debts in the order in which his will directs, if there be sufficient property of the kind indicated to pay his debts. (Civ. Code, sec. 1359.) There is neither averment nor finding that the personal property in the domicile has been exhausted, nor that any personal property exists in, or has been removed to, California. On the contrary, it is found that all the estate in California is real estate. (*Cherry* v. *Speight,* 28 Tex. 517; *Hill* v. *Tucker,* 13 How. (U. S.) 458.)

The other points made on the appeal as to the admissibility of the evidence relating to the knowledge of plaintiff of the

bankruptcy proceeding, the mortgage on the Minnesota property, and the sufficiency of the showing of want of knowledge of the probate proceeding in California to stay the bar of the statute of limitations, and of the affidavit attached to the claim, need not be considered. We cannot, however unnecessary it may be to the decision, refrain from saying that an affidavit: "That said claim is due and unpaid, and there are no offsets against the same, and no credits thereon," is not merely defective, but entirely lacks some of the most important elements of the statutory requirement that it shall state, "that the amount is *justly* due, that *no payments have been made thereon which are not credited,* and that there are no offsets to the same, to the knowledge of the affiant."

Judgment and order reversed.

Allen, P. J., and Shaw, J., concurred.

A. petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 31, 1910.