CHARLES ALBERT SMITH, as Ancillary Administrator of CAROLINE G. SMITH, Deceased, Respondent, v. THE SECOND NATIONAL BANK OF THE CITY OF NEW YORK, Appellant.

1. ANCILLARY ADMINISTRATOR — GENERAL POWERS. An ancillary administrator has the same general powers as a domestic administrator except in the particulars specified in section 2702 of the Code of Civil Procedure.

2. TITLE TO ASSETS OF ESTATE. The exceptions specified in said section do not curtail or limit his title to the assets of the estate in his hands, but such title is coextensive with that of a domestic or principal administrator.

3. POWER TO PLEDGE. A domestic administrator has the power in the exercise of his duties of administration to pledge the assets of the estate for the purposes of the estate, and an ancillary administrator has the same power.

4. POWERS NOT LIMITED TO TRANSMISSION OF ASSETS TO DOMICILIARY ADMINISTRATOR. Where an ancillary administrator has obtained a loan upon his statement that he wished " money for the purposes of the estate in anticipation of income," and as collateral security for the payment of his promissory note given as such administrator, has pledged a bond belonging to the estate, the pledgee, if he has acted in good faith, cannot,

at the instance of the successor of such administrator, be compelled to deliver up the bond without the payment of the debt secured thereby. *Smith* v. *Second Nat. Bank,* 52 App. Div. 631, reversed.

(Argued January 9, 1902; decided January 28, 1902.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered July 5, 1900, affirming a judgment in favor of plaintiff entered upon a decision of the court at a Trial Term without a jury.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John Notman* for appellant. The administrator had full power to obtain the loan from the bank as he did, and to make the note and pledge of the bond therefor. (Code Civ. Pro. §§ 2700–2702 ; Redf. on Surr. [4th ed.] 306 ; *Hopper* v. *Hopper,* 53 Hun, 394.) The defendant was not charged with the duty of making any inquiry as to the administrator's powers to make the loan and pledge. (Cook on Stockholders, § 474 ; *Goodwin* v. *A. Nat. Bank,* 48 Conn. 550 ; *Lietch* v. *Wells,* 48 N. Y. 585 ; *Duncan* v. *Jaudon,* 15 Wall. 165 ; Jones on Pledges, § 482.) There was nothing in the transaction which charged the bank with any knowledge or information that the executor was committing any fraud or intended to misapply the proceeds. (*Lowry* v. *Commercial Bank,* Taney's Cir. Ct. Dec. 310 ; *Walker* v. *Taylor,* 21 L. T. [N. S.] 845 ; *Field* v. *Schieffelin,* 7 Johns. Ch. 150 ; *Colt* v. *Lasnier,* 9 Cow. 320 ; *Gottberg* v. *U. S. Nat. Bank,* 40 N. Y. S. R. 910 ; 131 N. Y. 595 ; *Goodwin* v. *Am. Nat. Bank,* 48 Hun, 550.)

*Daniel Seymour* for respondent. The powers and duties of an ancillary administrator are prescribed and limited by sections 2070 and 2701 of the Code of Civil Procedure. (*Powell* v. *Powell,* 23 Mo. App. 365 ; *Smith* v. *Ayer,* 101 U. S. 320.)

WERNER, J.   The question in this case is whether an ancillary administrator has the same general powers as a domestic or principal admininstrator.   It arises out of the following facts : Caroline G. Smith died intestate on the island of Cuba, and letters of administration upon her estate were there duly issued to Carlos F. P. Smith.   The intestate left personal assets within this state, and Sidney T. Smith was duly appointed ancillary administrator by the Surrogate's Court of New York county.   Among such assets there was a New York seven per cent bond of the par value of five thousand dollars, which the said Sidney T. Smith, as such ancillary administrator, pledged with the defendant for a loan of six hundred dollars which was stated to be for the purposes of the estate.   Thereafter the ancillary letters of administration to said Sidney T. Smith were revoked, and the plaintiff herein was duly appointed his successor.   This action was brought to compel the defendant to deliver up said bond on the ground that plaintiff's predecessor, as such ancillary administrator, unlawfully, and without authority, hypothecated the same to secure said loan of six hundred dollars, and that plaintiff is entitled to the possession thereof.   Upon the trial of the issues framed by the pleadings it appeared affirmatively that upon the application · for said loan the said Sidney T. Smith exhibited his letters of administration and stated that he wished " money for the purposes of the estate in anticipation of income."   He signed a note as ancillary administrator and, in the same capacity, opened an account with the defendant. The note was credited to his account and the proceeds thereof withdrawn upon checks signed by said Sidney T. Smith as ancillary administrator.   It did not appear what this money was actually used for, and plaintiff did not claim that the officers of the defendant had any reason to believe that it was not to be used for the estate.   The plaintiff's claim has thus far been sustained upon the theory that the powers of an ancillary administrator are strictly limited to his transmission of the assets which come into his hands, to the domiciliary administrator, unless otherwise expressly directed

by the court which issued the ancillary letters. The contention in this behalf is based upon sections 2700 and 2701 of the Code of Civil Procedure, which are as follows: (Section 2700) "The person to whom ancillary letters are issued, as prescribed in this article, must, unless otherwise directed in the decree awarding the letters; or in a decree made upon an accounting; or by an order of the surrogate, made during the administration of the estate; or by the judgment or order of a court of record, in an action to which that person is a party; transmit the money and other personal property of decedent, received by him, after the letters are issued, or then in his hands in another capacity, to the state, territory, or country, where the principal letters were granted, to be disposed of pursuant to the laws thereof. * , * '*.'" (Section 2701) "The Surrogate's Court * * * may, in a proper case, by its judgment or decree, direct a person, to whom ancillary letters are issued as prescribed in this article, to pay, out of the money or the avails of the property, received by him under the ancillary letters, and with which he is chargeable upon his accounting, the debts of the decedent, due to creditors residing within the state; or, if the amount of all the decedent's debts, here and elsewhere, exceeds the amount of all the decedent's personal property applicable thereto, to, pay such a sum to each creditor, residing within the state, as equals that creditor's share of all the distributable assets, or to distribute the same among legatees or next of kin, or otherwise dispose of the same, as justice requires." The courts below have construed these sections to mean that an ancillary administrator has none of the general powers of a domestic or principal administrator unless they are conferred by the order or decree awarding ancillary letters of administration. We think this construction of these sections of the Code is too narrow and restricted.

By the terms of section 2702 of the Code all the provisions of chapter 18, relating to the rights, powers, duties and liabilities of an executor or administrator, apply to a person to whom ancillary letters are granted, except those contained in

the fifth title of said chapter 18, or where special provision is otherwise made, or where a contrary intent is expressed in or plainly to be inferred from the context of article 7, which relates to foreign wills and ancillary letters. A fair reading of so much of the context of this article as is embraced in section 2700 shows that the restrictive language relied upon by the plaintiff relates solely to the ancillary administrator's ultimate duty of transmission of assets when no other direction is made. Unless otherwise directed, he must "transmit the money and other personal property of the decedent, received by him after the letters are issued, or then in his hands in another capacity, to the state, territory or country where the original letters were granted." The duty to transmit assets does not arise until the preliminary work of local or ancillary administration has been performed, and the saving clause of this section was evidently intended to cover cases in which the assets, instead of being transmitted, must be retained within the jurisdiction of the local Surrogate's Court for the payment of debts of the decedent. The directory language of section 2701 does not change the meaning of section 2700, but, on the contrary, serves to emphasize the fact that an ancillary administrator has other duties beside the mere transmission of the assets which come into his hands, and with regard to which he may receive the direction of the court. "The Surrogate's Court * * * may, in a proper case, * * * direct a person to whom ancillary letters are issued * * * to pay * * * the debts of the decedent." This is the language of section 2701 as paraphrased to apply to this case. It is doubtless always proper for an administrator, whether domiciliary or ancillary, who deems it necessary to pay debts in the course of administration, to ask the direction of the court in the premises, but it is not always necessary.

Section 2701 was obviously designed to meet some of the special circumstances out of which the necessity for ancillary administration arises. It does not limit, but amplifies the ordinary powers of a Surrogate's Court relating to the admin-

istration of estates.   It is to be remembered that the question
before us is really one of title.   There is nothing in the
language of the sections referred to which indicates that the
title of an ancillary administrator, to the assets of his intes-
tate, is any different from that of a principal or domestic
administrator.   By reference to the exceptions mentioned in
section 2702 it will be observed that they have no application
to the question of title.   The fifth title of chapter 18, which
is referred to as one of the exceptions, relates to the sale of
decedent's real estate and distribution of proceeds.   Another
exception to the rule that an ancillary administrator has all
the rights, powers, duties and liabilities of a domestic admin-
istrator, arises when special provision is otherwise made in
said article seven ; and still another exists when a contrary
intent is expressed in or plainly to be inferred from the con-
text.   There is no special provision in any of the sections
of the Code as to the title of an ancillary administrator, nor
do we find any section which, either in express terms or by
necessary inference, discloses a legislative intent to that
effect.   The foregoing views are substantially a reiteration of
those expressed in *Hopper* v. *Hopper* (53 Hun, 397 ; affirmed
in 125 N. Y. 403).   In that case the question arose upon the
right of a creditor to sue an ancillary executor in the courts
of this state.   This necessarily involved a decision as to his
status.   The General Term of the second department, in
discussing this question, said : " An ancillary administration is
as efficacious as any other administration so far as the question
of title is concerned, the fact that the administration is ancil-
lary only going to the discretion of the court in the disposi-
tion of the assets."   In affirming the judgment the court said :
" The Code (section 2702) provides that all the provisions of
its eighteenth chapter, relating generally to Surrogate's
Courts and proceedings therein, and to the rights, powers,
duties and liabilities of an executor or administrator shall,
with some minor exceptions, apply to a person to whom ancil-
lary letters are granted, and thus puts him upon a level, so far

as his official character is concerned, with the ordinary executors appointed by our courts."

What, then, are the powers of a domestic executor or administrator with reference to the sale or transfer of personal property of the estate in his hands? In Jones on Pledges & Collateral Securities (2d ed. sec. 61) we find this statement of the rule applicable to this case. "An administrator may pledge personal property belonging to the estate, and the pledgee dealing with him in good faith will obtain a good title, for the legal title to such property is in the administrator, and the purposes of the estate may require such a use of it." Again, in section 482 the learned author says: "For the purposes of administration the title of an executor is absolute, and a purchaser or pledgee from him of personalty of the estate is neither required to notice the provisions of the testator's will, nor made liable for the executor's misapplication of the purchase money. * * * The same rule applies to administrators. The law casts the legal ownership of personal property of a deceased intestate upon his administrators. * * * A sale and transfer of stock by them is, therefore, in the line of their duty. There is no *cestui que trust* having a right to interfere and prevent such a transfer, hence letters of administration are always sufficient evidence of authority." Schouler, in his work on Executors, says (Sec. 349): "The great weight of authority, English and American, is to the effect, that unless positively restrained by statute, or the particular will, the representative of the deceased may mortgage or pledge the personal assets, or part of them, as well as alienate; the general presumption being that one does so, as he well might, in the course of a prudent administration." These statements are fortified by many English and American authorities too numerous to cite; and by *Wheeler* v. *Wheeler* (9 Cow. 34); *Leitch* v. *Wells* (48 N. Y. 595), and *Field* v. *Schieffelin* (7 Johns. Ch. 150). The principles above adverted to must not be confused with those which apply to trustees acting under a limited authority, as in *Dun-*

*can* v. *Jaudon* (15 Wallace, 155); or with those which control the cases where the person dealing with an executor or administrator has knowledge, or reasonable grounds for believing, that the latter intends to misapply the money, or is in the very transaction applying it to his own private use. In the case at bar there is nothing to impugn the good faith of the defendant. The latter took the pledge and made the loan, upon the faith of the ancillary letters of administration, and the statement by the administrator that the money was for the purposes of the estate.

The foregoing discussion, therefore, leads us to the following conclusions: *First*. That an ancillary administrator has the same general powers as a domestic administrator, except in the particulars specified in section 2702, Code Civil Procedure. *Second*. That the exceptions mentioned in said section do not curtail or limit the title of an ancillary administrator to the assets of the estate in his hands, but that such title is coextensive with that of a domestic or principal administrator. *Third*. That a domestic administrator has the power, in the exercise of his duties of administration, to pledge the assets of the estate for the purposes of the estate, and that an ancillary administrator has the same powers. *Fourth*. That this being the avowed purpose for which the defendant took the pledge, and made the loan above referred to, in good faith, the plaintiff is not entitled to recover the pledged bond without paying the debt which it was given to secure.

It thus follows that the judgment of the court below must be reversed, and a new trial granted, with costs to abide the event.

GRAY, O'BRIEN, BARTLETT, HAIGHT and CULLEN, JJ., concur; PARKER, Ch. J., taking no part.

Judgment reversed.