LUKE V. LOCKWOOD, Appellant, v. UNITED STATES STEEL CORPORATION, Respondent.

Executors and administrators — transfer of stock — when ancillary executor of non-resident, having shares of stock in foreign corporation, within this state, may compel New York transfer office of said company to issue certificate to transferee named by such executor.

1. Ancillary administration in this state is regulated by statute, and an ancillary executor or administrator has the same general powers as a domestic executor or administrator, except in disposing of the decedent's real property for the payment of his debts and funeral expenses.

2. At the time of the death of the decedent, a non-resident, there was located in this state and came lawfully into the plaintiff's possession as her executor a certificate of shares of capital stock of the defendant corporation, issued by the defendant in the name of such decedent, and which were standing on the stock transfer books of the defendant in her name at the time of her death. The plaintiff caused to be tendered to the defendant at a stock transfer office maintained by it in the city of New York such certificate, and offered to surrender it to the defendant, and demanded that a new certificate be issued in the name of a transferee, to the end that said certificate and the shares of stock represented thereby might be duly transferred. The defendant refused so to do upon the ground that the plaintiff could only assert his title to the stock which he has derived from the testatrix, in the state of New Jersey, under whose laws defendant was incorporated. Held, that the fact that the defendant maintains in the city of New York an office for the purpose of receiving certificates of its corporate stock for transfer upon its books and of delivering new certificates when such transfers have been made, constitutes New York the domicile of the corporation, so far at least as the registry and transfer of shares therein are concerned.

3. Authorities as to the situs of the shares of stock in question considered and distinguished.

Lockwood v. U. S. Steel Corporation, 153 App. Div. 655, reversed.

(Argued June 2, 1913; decided November 18, 1913.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court, in the first judicial

department, entered December 6, 1912, which reversed an interlocutory judgment of Special Term overruling a demurrer to the complaint and sustained such demurrer.

The allegations of the complaint may be summarized as follows:

The defendant is a foreign corporation organized under the laws of New Jersey and maintains in the county and state of New York an office for the purpose, among other things, of receiving certificates of its corporate stock for transfer upon its books and of delivering new certificates when such transfers have been made.

One Mary Adelaide Zuill was in her lifetime the owner of forty shares of the capital stock of said corporation standing upon the books thereof in her name. She was formerly a resident of New York, but removed to Bermuda, where she died, being a resident of said island, on March 24, 1910, leaving a last will and testament, of which a copy is annexed to the complaint, by which will she appointed the plaintiff and one Henry J. Cox to be the executors thereof and trustees thereunder. The said will was in every respect duly executed in accordance with a statute of Bermuda then and there in force known as "The Wills Act of 1840." It was duly admitted to probate by the Surrogate's Court of the county of New York on or about September 23, 1910, and letters testamentary thereon were thereupon duly issued by said Surrogate's Court to the plaintiff, the said Henry J. Cox having failed to qualify. The will has not been admitted to probate nor have letters been granted thereon in any other jurisdiction.

The decedent left an estate consisting entirely of personal property located in the state of New York, worth upwards of $50,000, all of which came into the lawful possession and custody of the plaintiff. At the time of her death there was located in the state of New York and came lawfully into the plaintiff's possession a certificate of forty shares of the common capital stock of the defend-

ant corporation duly issued by the defendant in the name of the decedent, dated July 7, 1903, numbered F53642 duly signed and countersigned and standing in the stock transfer books of the defendant in the name of the decedent at the time of her death.

On or about July 24, 1911, the plaintiff caused to be presented and tendered to the defendant at its stock transfer office in the city of New York the said certificate of stock, with a duly executed power of attorney in blank to transfer the same, indorsed thereon, accompanied by a surrogate's certificate of the issue of letters testamentary to the plaintiff, a waiver by the state comptroller of New York of notice of the transfer of said certificate, and also a certificate of the comptroller of the state of New Jersey that the collateral inheritance tax due to said state upon said shares had been paid; and thereupon the plaintiff duly tendered and offered to surrender said certificate to the defendant, and duly demanded that a new certificate be issued in the name of Baruch Brothers, of New York, to the end that said certificate and the shares of stock represented thereby might be transferred to them.

The value of said certificate and shares was then $3,240.00. The defendant refused and still refuses to issue a new certificate or to transfer the same or the shares thereby represented, to the damage of the plaintiff in that amount.

The defendant demurred to the complaint on the ground that the facts therein stated were not sufficient to constitute a cause of action. The demurrer was overruled at the Special Term, but the interlocutory judgment to that effect has been reversed by the Appellate Division, which, however, has permitted an appeal to this court from the order of reversal and certified the following question:

" Does the complaint herein on its face state facts sufficient to constitute a cause of action ? "

*Frederic R. Coudert, Robert L. Redfield* and *Howard Thayer Kingsbury* for appellant. The plaintiff had legal title to the certificate of stock and full power to transfer the same. (Code Civ. Pro. § 2476; *Russell v. Hartt*, 87 N. Y. 19; *Matter of Rubens*, 128 App. Div. 626; 195 N. Y. 527; *Matter of Rubens*, 135 App. Div. 917; *People ex rel. Gould v. Baker*, 150 N. Y. 52; *Matter of Butler*, 38 N. Y. 397; *Hartnett v. Wendell*, 60 N. Y. 346; *Matter of Bergdorf*, 206 N. Y. 309; *Trecothick v. Austin*, 4 Mason, 16; *Higgins v. Eaton*, 178 Fed. Rep. 153; 202 Fed. Rep. 75; *Simpson v. J. C. Contracting Co.*, 165 N. Y. 193.) The stock in question is property within the state. (*Jermain v. L. S. & M. S. R. Co.*, 91 N. Y. 483; *People ex rel. Hatch v. Reardon*, 184 N. Y, 431; *Simpson v. J. C. Contracting Co.*, 165 N. Y. 193; *Barry v. Calder*, 48 Hun, 449; 111 N. Y. 684; *Kilmer v. Hutton*, 131 App. Div. 625; *Reichard v. Hutton*, 148 App. Div. 813; *McAllister v. Kuhn*, 96 U. S. 87; *London, etc., Bank v. Aronstein*, 54 C. C. A. 663; 117 Fed. Rep. 601; *Merritt v. Am. Steel Barge Co.*, 24 C. C. A. 130; 79 Fed. Rep. 228.) The refusal to transfer a stock certificate when lawfully demanded is in the nature of a conversion, and an action for damages is the usual and proper remedy. (*Commercial Bank v. Kortright*, 22 Wend. 348; 20 Wend. 91; *Case v. Bank*, 100 U. S. 446, 455; *People ex rel. Jenkins v. Parker Vein Coal Co.*, 10 How. Pr. 186, 543; *People ex rel. Rottenberg v. Utah G. & C. M. Co.*, 135 App. Div. 418.) A corporation doing business in a state other than that of its incorporation may often be regarded as domiciled or located for certain purposes in the state where it does business. (*Morgan v. Mutual Benefit Life Ins. Co.*, 189 N. Y. 447; *New England M. L. Ins. Co. v. Woodworth*, 111 U. S. 138.)

*William W. Corlett, Raynal C. Bolding* and *Charles MacVeagh* for respondent. The probate of decedent's

will in the county of New York and the issue of letters testamentary to appellant did not confer upon him authority to transfer stock of the decedent in the United States Steel Corporation. (*Matter of Butler,* 38 N. Y. 397; *Parsons* v. *Lyman,* 20 N. Y. 103; *Peterson* v. *Chemical Bank,* 32 N. Y. 21; *Matter of Rubens,* 128 App. Div. 626.) The stock of respondent owned by the decedent was not property within the state of New York. Shares of stock can be said to have their situs only in two possible places — either at the domicile of the corporation or at the domicile of the stockholder. (*Plympton* v. *Boyleston,* 93 N. Y. 660; *Matter of James,* 144 N. Y. 6; *Matter of Bronson,* 150 N. Y. 1; 1 Cook on Corp. § 12.) The letters testamentary issued to the appellant by this state, although original in form, are in fact ancillary and are not on a parity with principal or domiciliary letters. (*Taylor* v. *Syme,* 162 N. Y. 513; *Matter of Newell,* 38 Misc. Rep. 563; *Stevens* v. *Gaylord,* 11 Mass. 255.) The refusal of respondent to transfer its stock upon an original probate, obtained neither at the domicile of the decedent nor at the domicile of the corporation, was proper. (*Drexel* v. *Berney,* 122 U. S. 241; *Wyman* v. *United States,* 109 U. S. 654; *Parsons* v. *Lyman,* 20 N. Y. 103; *Matter of C. M. & D. B. N. Co.,* 16 Atl. Rep. 191.)

WILLARD BARTLETT, J.   Upon the question raised by this appeal, whether the defendant is under any legal obligation to transfer the stock as requested by the appellant, the Appellate Division avows its inability to find any direct authority. The learned judge who wrote the opinion below, however, treats the plaintiff as an ancillary executor whose authority is strictly limited to personal property within the jurisdiction of the court; and he argues that the *situs* of the property represented by the certificate of stock in question cannot be deemed to be in New York because under the authorities which he cites the certificate is to be regarded as having its *situs* either

at the domicile of the deceased testatrix (which was Bermuda) or at the domicile of the defendant corporation (which is New Jersey).

We do not perceive that it makes any essential difference in this case whether the letters of the plaintiff executor are ancillary or domiciliary. Ancillary administration in this state is regulated by statute and an ancillary executor or administrator has the same general powers as a domestic executor or administrator except in disposing of the decedent's real property for the payment of his debts and funeral expenses. (*Smith* v. *Second National Bank of N. Y.*, 169 N. Y. 467.) Ancillary letters are not less in their effect than other letters. "Apart from the statute, all administrations of estates in different countries are independent, so far as a matter of strict right or jurisdiction; but as a matter of comity all administrations in countries other than that of the domicile are ancillary to the principal administration." (CULLEN, J., in *Hopper* v. *Hopper*, 53 Hun, 394, 396; affd., 125 N. Y. 400.)

The cases cited in support of the proposition that the *situs* of the stock in question must be either in Bermuda or New Jersey are *Jermain* v. *L. S. & M. S. Ry. Co.* (91 N. Y. 483, 492); *In re Enston* (113 N. Y. 174, 181); *In re James* (144 N. Y. 6, 12), and *In re Bronson* (150 N. Y. 1).

In the *Jermain* case it was merely held that the certificate of the defendant corporation issued to the plaintiff was not itself the stock but only the evidence thereof. "A share of stock," said EARL, J., "represents the interest which the shareholder has in the capital and net earnings of the corporation." There is nothing in this which bears directly upon the question here.

The *Matter of Enston* is more nearly in point. There it was held that the corporate stocks of a decedent were not taxable here under the general laws of the state, although the share certificates were held here by the dece-

dent's agent.  "The certificates are in no general sense property," said Judge ANDREWS.  "They simply represent interests in the corporations, and the *situs* of the property owned by a shareholder in a corporation is either where the corporation exists or at the domicile of the shareholder; it can in no proper sense be said to be where the certificates happen to be in the hands of an agent in a state where the corporation has no existence and the owner no domicile."  It is to be observed that this was a tax case in which the court was endeavoring to determine the locality of corporate stock *for purposes of taxation*; and as will be shown hereafter, the *situs* of such property may be in one place so far as the incidence of a tax is concerned and in another when the certificates are stolen or they are sought to be reached by a creditor through the process of attachment.  Furthermore, in the case at bar, it may be said that the defendant has an existence in the state of New York for the purpose of registering transfers of its stock; it lives here for that purpose, having come into the state therefor of its own accord; and, therefore, one of the conditions is absent here upon which the statement of the rule in the *Enston* case was predicated.

In the *James* case, which arose under the Collateral Inheritance Tax Law, Judge GRAY said that the certificates of stock held by the testator represented his interests in the corporations which issued them "and the legal *situs* of that species of personal property is where the corporation exists, or where the shareholder has his domicile;" and the *Bronson* matter was another tax case in which the same learned judge asserted the same doctrine.  Neither of these cases could have been deemed by him to be inconsistent with *Simpson* v. *Jersey City Contracting Co.* (165 N. Y. 193), in which he also wrote the opinion, and which is the principal New York authority relied upon by the appellant.

In the *Simpson* case certain certificates of stock of a

foreign corporation belonging to a non-resident were in the possession of a resident of this state as security for a debt; and it was held that the interest therein of the owner and pledgor was a property right within this state which was subject to levy under a warrant of attachment. Referring to *Matter of Bronson* (*supra*) Judge GRAY declared that it was difficult to see how that case, in defining the general understanding of the law with respect to the ownership of stock in a corporation, could have any authoritative application to the question whether an attachment would lie against the interest represented by foreign stock certificates actually in New York; and as to that question he said: " The distinctions sought to be drawn are, largely, artificial. The truth is that it [the foreign corporation] did have property here, in the common acceptation of the term, as well as in the eye of the law. Certificates of stock are treated by business men as property for all practical purposes. They are sold in the market and they are transferred as collateral security for loans, and they are used in various ways as property. They pass by delivery from hand to hand and they are the subject of larceny." (p. 197.) The question was whether, the foreign certificates being here, there was not present in this state property of the debtor capable of effectual seizure by judicial process; and this court held that there was.

Upon a similar line of reasoning it seems to us that the facts set out in the complaint in the case at bar show that there is property of the plaintiff in New York which he is entitled to have transferred upon the books of the defendant corporation which it has provided and keeps for that purpose in New York.

The maxim *mobilia sequuntur personam* is based upon a legal fiction which has proved most useful in determining the right of succession to personal property; but in modern times " since the great increase in amount and variety of personal property, not immediately connected with the

person of the owner, that rule has yielded more and more to the *lex situs*, the law of the place where the property is kept and used." (*Pullman's Palace Car Co.* v. *Pennsylvania*, 141 U. S. 18, 22.) The great writers on the conflict of laws concede that it is not of universal application; and Story declares that it does not obtain whenever it becomes necessary for the purpose of justice that the actual *situs* of the thing should be examined. (Story on Conflict of Laws, § 550.) Justice certainly requires that the actual *situs* of the thing should be considered in the present case, where the alternative would be to send the shareholder out of the state to effect a transfer of stock which the corporation has provided convenient ways and means for transferring right here in New York. To impose this burden upon the shareholder unless it were demanded by some imperative rule of law would subject the administration of justice to deserved reproach.

The tendency of the courts to prefer actualities to fictions in passing upon the disposition of personal property is well illustrated by a comparatively recent English case which the learned counsel for the respondent concedes is favorable to the appellant's contention in part. (*In re Clark*, L. R. [1 Ch. 1904] 294.) There the court was called upon to construe a will by a testator domiciled in England, who bequeathed all his personal estate in the United Kingdom to his home trustee, and all his personal estate in South Africa to his foreign trustee. He was possessed of shares in South African mining companies, which had an office in London where a duplicate register of shares was kept and shares could be transferred. Mr. Justice FARWELL said: " I have got to find out the locality of the personal estate, whether English or South African. The property I have to deal with is a share, and that is represented by a certificate without which no transfer can take place. The actual effective transfer can be done equally effectually in South Africa or in England, and the only conceivable distinction that I can dis-

cover in point of locality is the possession of the certificate which for this purpose is essential to complete the title to the shares. Therefore I hold that where the certificates of the shares in these companies were in England they pass under the gift of property situated in England, and not under the gift of property in South Africa." Hence it will be seen that the place where the shares of stock actually were was the controlling element in the construction of this will, since no reference was made by the learned judge to the doctrine that personal property is deemed to follow the domicile of the owner.

The conclusion that the plaintiff is entitled to prevail upon the allegations of the complaint finds support not only in the opinion of Judge GRAY in the case of *Simpson* v. *Jersey City Contracting Co.* (*supra*), but also in the salient fact that the defendant corporation by the establishment of a stock transfer office here has become *pro tanto* domiciled in this state.

The will of the testatrix was lawfully admitted to probate in the state of New York and letters testamentary were issued to the plaintiff as her executor in this state. The certificate of stock in the defendant corporation which had belonged to the testatrix was also in the state of New York. The defendant, a New Jersey corporation, maintained an office for the transfer of its stock in the state of New York. Nevertheless the defendant, relying upon the proposition that the *situs* of personal property owned by a decedent must be deemed to be either at the domicile of the decedent or in the case of corporate stock the domicile of the corporation, insists that the plaintiff can only assert his title to the stock which he has derived from the testatrix in the state of New Jersey under whose laws the defendant was incorporated.

As has already been pointed out, the proposition for which the defendant contends is that shares of stock have their *situs* only in two possible places — either at the

domicile of the corporation or at the domicile of the stockholder.

In the present case, however, it is alleged in the complaint and necessarily admitted by the demurrer that the defendant maintains in the county and city of New York an office for the purpose of receiving certificates of its corporate stock for transfer upon its books and of delivering new certificates when such transfers have been made. Does not this fact constitute New York the domicile of the corporation, to some extent at least — so far as the registry and transfer of shares therein are concerned ? We think it does. It has been held in reference to life insurance companies both by the Court of Appeals of this state and by the Supreme Court of the United States that such corporations may often be regarded as domiciled for certain purposes in the foreign state where they are permitted to do business. (See *Morgan* v. *Mutual Benefit Life Ins. Co.*, 189 N. Y. 447; *New England Mutual Life Ins. Co.* v. *Woodworth*, 111 U. S. 138.)

The order of the Appellate Division should be reversed and the interlocutory judgment affirmed, with costs in both courts, and the question certified answered in the affirmative.

CULLEN, Ch. J., HISCOCK, CHASE, HOGAN and MILLER, JJ., concur; GRAY, J., not sitting.

Ordered accordingly.