In the Matter of the Estate of Amedee De Gasquet James, Deceased.

Elizabeth Pratt De Gasquet James, Individually and as Executrix, etc., of Amedee De Gasquet James, Deceased, Appellant; George Watson Pratt De Gasquet James and Others, Respondents.

(*Supreme Court, App. Div., Third Department, May* 18, 1916.)

Surrogate's Court—Executors and administrators—Proceeding for accounting by executrix under will probated in France—Res adjudicata—Community system, waiver of rights under—Allowance to testatrix from income of infants for their maintenance—Liability for depreciation of securities—Right to commissions, expenses and disbursements—Right of Surrogate's Court in this country to settle accounts of executrix under French will.

A testator whose mother was a French woman, but who was born in this country, removed to France and until the date of his death had no other domicile or residence. He came to this State for the purpose of marrying, and immediately thereafter, with his wife, returned to France and made it their home. At and before the time of the marriage, it was the intention of both parties to go to France to live. The testator at the time of his death had three daughers, two of whom married French husbands and are citizens and residents of France, and the other married a major in the German army and lived and died in Germany, and her minor children thereafter resided with the testator's wife until the commencement of proceedings to settle her accounts as executrix, when they returned to their father in Germany.

*Held,* that France was the matrimonial domicile, and that since the will was written by the testator himself, in French, and was probated in France, the law of France should determine its effect and control the settlement of his estate and the marriage rights of the parties;

That the judgment of the French court admitting the will to probate is not *res adjudicata* upon the question whether the system of community obtained between the testator and his wife;

That the wife by proving the will and taking possession of the property in Europe did not elect to forego her rights under the French law;

That under the evidence, the wife did not waive her legal rights to community;

That the children are not injured by the fact that their mother has not yet received all that she is entitled to, and they cannot urge that she is estopped thereby from claiming her legal rights or that she has waived them;

That the account of the executrix should not be surcharged with payments made by her to the father of her grandchildren from their income, to which he was entitled under the German law;

That the account of the testatrix should not be surcharged on account of depreciation in value of securities;

That since the executrix was charged with responsibility as such, she is entitled to full commissions, and her expenses and disbursements in the settlement and administration of the estate;

That in the discretion of the court the accounting may be completed in the Surrogate's Court or may be remitted to the French courts.

The fact that the executrix is now a German subject, that the grandchildren and their father are residents of Germany, and that France and Germany are at war are circumstances which may be consideed in retaining the settlement of the estate in the Surrogate's Court.

Since the payments made by the executrix to her husband and to and for her daughters were made in France and her acts and neglects complained of took place in France, evidence of such payments should not be controlled by the law of this State if a different rule exists in France.

Hence, unless it be stipulated that the executrix may prove such expenditures in any manner which would be competent in the settlement of her accounts in a French court, the matter should be remitted to France for trial and determination.

COCHRANE and HOWARD, JJ., dissented, with opinion.

APPEAL by Elizabeth Pratt De Gasquet James, individually and as executrix, from a decree of the Surrogate's Court of the county of Ulster, entered in the office of said Surrogate's Court on the 21st day of March, 1915, judiciallly settling her accounts herein. Also motions to dismiss an appeal.

Charles S. Aronstam (C. A. Hereshoff Bartlett of counsel), for the appellant.

J. Noble Hayes, for the respondents George Watson Pratt De Gasquet James and another.

Coudert Brothers (Howard Thayer Kingsbury of counsel), for the respondent Victoire Louise De Libran.

Howard Chipp, as special guardian for the infant respondents, Hereward von der Decken and another.

KELLOGG, P. J. — Count Amedee De Gasquet James was born at New Orleans. His mother was a French woman. They removed from New Orleans to France about 1863, where he lived with his mother until his marriage with the appellant in 1881. He inherited from his mother, or acquired through her, the title of count in France, and lived and died there as a French nobleman. His mother was buried in the family vault at Loudres, France, where at his request he was buried. In 1881 he came from France to this State for the purpose of marrying the appellant, and immediately after the marriage they returned to France and made it their home. At and before the time of the marriage it was the intention of both to go to France to live. From the time he left New Orleans until the date of his death he had no other domicile or residence than France, and from the time of her marriage the appellant has had no other domicile or residence. It seems clear that France was the matrimonial domicile, and that the marriage rights of the spouses depend upon the laws of France. His will, written by himself in French, was made and probated in France, and the law of France should determine its effect and control the settlement of his estate. The controversy here arises between the mother, their two daughters, son, and two grandchildren representing a deceased daughter. Two of the daughters married French husbands and are citizens and residents of France; the other daughter married a major in the German army, lived and died in Germany, and her minor children, after their mother's death, resided with the appellant until about the time these proceedings were brought, when they returned to their father in Germany. The son has always lived in

France. The appellant has not resided in America since her marriage, and none of the other parties ever resided here. All acts or neglects of the appellant with reference to this estate occurred in France.

It is claimed, however, that by probating her husband's will and taking the property given to her thereunder, she has renounced her marital rights and is limited strictly to the provisions of the will, or, as it is otherwise stated, " By the judgment of the French court the question is *res adjudicata* here." The French judgment is what we would call the decree admitting the will to probate. The will had been filed before that time in the probate office, but the heirs and next of kin had not been cited, and this judgment upon the appellant's petition was made to establish its validity. It recites that the action was brought by the widow to require the delivery to her of the legacies; that the will is regular in form, and it is proper to grant her prayer, and it directs that the will be carried out according to its form and tenor, and that " the specific legacy " given to her by the will be delivered. There is nothing before us to show what proof was submitted to the French court, or that any other questions were considered or determined. We must assume that the court made proper inquiry and had knowledge of the facts necessary to enable it to pass upon the validity of the will. We cannot assume that any material fact was suppressed. It appeared before the court that while the testator was an American subject, he was a resident and a property owner of France, with several residences and establishments there; that he was a French count, and that he left a wife and four children surviving him; that his property was situated in America, France and elsewhere, and that the will was written by him in French, indicating an intent that it should be probated in France, and that he and his family were permanent residents of France. The court knew that the system of community prevailed generally in France between husband and wife unless by contract between them it was other-

wise provided, and there is no suggestion that any such contract ever existed. The appellant, her children and the republic were represented by counsel. Upon the death of a husband the application of the community system is the ordinary rule in France; any other property rights between the spouses would be an exception to the general rule. The natural inference, therefore, arises that it was assumed that the community system applied to these spouses, or that so far as the matters before the court were concerned it was immaterial whether it applied or not. If it had been necessary to determine whether the community system applied in this case, further information would have been required. A conclusion that the community system did not apply would have been against the facts and the law of the case, and necessarily would have resulted from false information or carelessness upon the part of the court and counsel, none of which can be assumed. The inference follows that the court assumed that community existed, or determined that it was immaterial whether or not it existed; that in any and all events the will was valid and effectual. It is a pure effort of the imagination to assume that the decree established, directly or indirectly, that the community system did not apply. If any inference is to be drawn upon that subject it is to the contrary. The decree establishes that the benefits given to the wife by the will are not to the prejudice of the rights of the children when the true marital rights of the wife and all the rights of the children are considered. The decree must have been made in consideration of her marital rights and not in disregard of them. The proper inference is that the court concluded that the will did not in any way violate the marital rights of the appellant or any rights of the children, and that it was valid, whatever those rights might be. The question whether the system of community obtained between these spouses was not before the court and was not passed upon by the court, and, therefore, the decree cannot be *res adjudicata* upon that question.

" A judgment is not a bar or estoppel in a subsequent litiga-
tion between the same parties of a cause of action which might.
have been pleaded and determined by it, but was not, although
it may be a conclusive adjudication as to questions or facts
which were actually litigated and determined." (Cook v.
Conners, 215 N. Y. 175, 178.) We may, therefore, say that
the decree is not *res adjudicata* against the appellant.

The appellant, by proving the will and taking possession of
the European property, did not elect to forego her rights under
the French law. The will is not in any manner inconsistent
with those rights. The value of the estate in Europe and of
the appellant's property is not clearly shown. We infer from
the record that the American property was of the value of about
$600,000; the European property of about $300,000. The
surrogate stated upon the trial that he would consider the
American estate as two-thirds and the French estate as one-
third of the whole property, and none of the parties objected.
The property the appellant contributed was apparently about
$200,000, making the community property about $1,100,000,
of which the appellant's interest would be about $550,000.
But the testator was at liberty to will to her a part at least of
his share of the community property. It is said that the
French law prohibits a person who leaves him surviving three
or more children from willing away more than one-quarter of
his property. We do not, however, assume under that rule
that three-quarters of the property must go to the children.
If he gave to a friend or charity one-quarter of his property, it
does not follow that the children would receive the remaining
three-quarters and the widow nothing. The law probably
means that as to three-fourths of his property in such a case,
he shall die intestate. It does not appear how such three-
fourths of his property would be divided between the widow and
children. No rights of the children are invaded so long as
the widow receives one-half only of the common property and
one-quarter of the testator's share in the remainder. Proba-

bly she could be given more, but in the absence of proof of the French law upon that subject it cannot now be determined. If, however, the bequests to her, with her interests in the community property, exceed the proper limit, compensation may be made in the settlement of the estate. The French decree recites that the tribunal had heard the arguments and the explanation of the attorneys in the action, and the arguments of the attorneys for the republic, and after deliberation thereon, in conformity with law, made the decree. This indicates that the general situation of the estate and of the spouses was laid before the court, so that it understandingly could determine that the widow was getting no more than her just rights under the will, and that the interests of the children under the statutes of France were not violated by its terms. We cannot say that it determined contrary to the facts or in ignorance of them; it is better to assume that it had before it all the facts, and the record before us indicates that if it had known the facts the decree could not have been otherwise. By taking the property in Europe the widow received on account of her share, the houses, furniture and other property in use by the testator, while the children's share is to be paid from securities of real money value. A case is cited from the French courts holding that " Parties who have voluntarily carried a will into execution of the alleged defects of which they were aware, are presumed to have ratified the provisions therein contained." It was, however, the duty of the appellant as executrix to prove this will, and there is nothing to indicate that she was aware of any defect or had any information which at any time put her to an election whether she would take under the will or otherwise. The facts as to the property and the parties show clearly that there was no defect in the will, and that the appellant, by the so-called legacies, has received less than she was entitled to under the will and the rules of law applicable to it. Apparently the appellant is not a business woman, and we may assume that she had no knowledge of her community rights, but that

fact cannot prejudice her. . The function of a court is to do justice for the wise and the unwise, and if a party comes into court not fully understanding his rights, the court will not sacrifice those rights, but will administer the law as it is unless by his mistaken conduct he has misled others to their detriment. The appellant has taken no rights to which she was not strictly entitled, and by proving the will and taking the bequests given her she has not in any way wronged or prejudiced her children. There is no reason why she should be compelled to surrender to them her marital rights when there is nothing in the will or in her acts requiring her to so do. She has received less than she is entitled to receive, and her children are not injured by the fact that she has not yet received all she is entitled to, and they cannot urge that she is estopped thereby from claiming her legal rights or that she has waived them. Estoppels and waivers arise to protect persons from injury by the irregular acts of another; here no injury can follow. There is no injury to the children from the fact that the mother took land and furniture instead of money, or from the fact that she has failed until now to demand her full legal rights. When the children raise technical legal objections to her detriment, she may properly invoke her legal rights.

We may add a few words to the will without changing its effect. If testator had given to his wife his interest in the property in Europe and had given to his children his interest in the property in America, there could be no reasonable objection to the will. But he could give her no greater interest in the property in Europe than he had, and he could give to the children no greater interest in the property in America than he had; therefore, the will is not inconsistent with the community system. There was no defect in it calling for an election upon her part. When the testator gives his fortune in America to his children, a reasonable construction of the provision limits it to the fortune in America which he owned and was capable of giving to them. It does not mean the wife's fortune, or the

wife's interest in the common property in America; it only means that the children are given all the property in America which he owns and is capable of disposing of by will. We, therefore, conclude · that the findings that the appellant has waived her legal rights of community are against the evidence and the law of the case.

·It is urged that under the law of France the acceptance of a residuary legacy waives the community rights and that the bequest to the appellant is a residuary legacy. The French court, in its decree, calls the provisions in behalf of the appellant " the specific legacy." The different residences in France, with the furniture, and the other items of property given to her, are named. These are not residuary bequests; apparently. the testator made no residuary bequests. If it had turned out that he was the owner of the property in Russia or Spain, it is clear, under this will, that he would have died intestate as to that property.

After the death of her daughter it seemed that her. minor children would be better cared for by appellant than by the father, a major in the German army, and it was arranged that the children were to be taken and cared for by her and she was to pay the father from their income 1,000 marks a month, and she continued such payments for five years. She swears " the German law states that he is entitled to the use of that income." It seemed to her, and I think wisely, in the interest of the grandchildren, that it was better to pay the father 1,000 marks a month and retain the balance of the income for the children, and that they should be brought up by her instead of being intrusted by the father, who was in the army, to strangers. Under the peculiar circumstances of this case I think it was error to surcharge her accounts with. 60,000 marks on account of such payments. She should be allowed a reasonable compensation from the income of the infants for their maintenance when with her.

Some of the securities left by the testator depreciated in

value and some became worthless. Some of them paid a sub-
stantial income for a long time and then became valueless.
The executrix's account has been surcharged with about $40,000
on account of this depreciation in value. I think this was
error. She was not required to sell and convert the securities
into money. The will contemplates that she, as the head of
the family, was to administer the property and take care of the
children, and she would have violated her duty if she had con-
verted the great mass of securities into money, thus making
them of but little productive value. If she had sold the
securities and bought others, there was the same liability of
loss or depreciation. The will did not contemplate an immedi-
ate division of the estate, and it was not in the interest of the
children that such division should be made. The mother prop-
erly left the securities undivided while her children were grow-
ing up and obtaining settlements in life. The provision of the
will authorizing her to put the securities in charge of a trust
company indicates that they were not to be divided up but were
to be kept together and that the income was intended for the
support and use of the children. Until the appellant married
there was no substantial reason why the estate should be divided,
and it was evidently better for all concerned that it should
remain with the safe custodians in America. Until that time
no criticism can be made upon her for not making a division.
No negligence has been shown which should properly charge
her with the depreciation or loss on account of the securities
left by the testator. The decree is erroneous in that respect.

The decree holds her liable for the performance of every duty
as an executrix, and has surcharged her account in a very large
sum because of certain mistakes which she has apparently made
in administering the trust. Evidently she is perfectly able to
make good any loss which has come to the estate from her
fault. Her good faith is unquestioned; she kept no books of
account. The income was remitted to her from the agents in
America, deposited in a bank and paid out by checks or by the

bank to the children calling for money.    Naturally mistakes
would occur when an attorney, without any substantial assist-
ance from her, prepares her account for settlement.    But
there is nothing to indicate any bad faith or wrongful act upon
her part, and if she is required to make good the losses which
the estate has suffered through her, if any, there is no good
reason why, under the circumstances of this case, she should
be denied commissions.    She is charged with every responsi-
bility of an executrix and should have the benefit coming to
the office.    She is entitled to full commissions and her expenses
and disbursements in the settlement and the administration of
the estate.

I agree that in the discretion of the court this accounting
might proceed to the end in the Surrogate's Court of Ulster
county or be remitted to the French courts.    The estate is a
large one; the husband selected his wife as his executrix when
he must have known that she had no business capacity qualify-
ing her for that position.    His securities in America were
placed with brokers or banks who had authority to buy or sell
at their discretion; in other words, to transact his business for
him.    His business in life seemed to be to live up to his title
and spend his income, and the position in which he left his
family required the mother, with this family of daughters and
a son, to maintain their position in life and make the necessary
expenditures which their rank, fortune and position required,
and which would tend to give them reasonable settlements in
life.    The provision in the will authorizing her to put the
securities in America in charge of one of the great trust com-
panies evidently meant that the trust company should exercise
with reference to them substantially the authority which his
brokers had exercised in his case, to collect and remit the in-
come, investing and reinvesting the corpus from time to time
as might be necessary.    It is not seriously claimed that the
appellant, as mother, has neglected any reasonable duty to her
children, or that she did anything or failed to do anything with

reference to their bringing up which is fairly subject to criticism.   It is not urged that the money was improperly expended for them or by them.   The criticism made is (1) That she did not make an earlier division of the estate, and upon that basis substantially she is denied commissions.   (2) Many expenditures which she claims to have been made have been surcharged to the account for the reason that she produced no vouchers. She was precluded from showing loans made by her to her husband and money paid by her to her deceased daughter.   It is conceded that none of the children ever gave her vouchers for the money paid them, and we have the result, perhaps to a certain extent compelled by our law, that this mother, who at all times has exercised her best ability and judgment for the interest of her family and in the management of the estate, who has had able bankers and counsel assisting her, and who has not attempted to make any profit from or take any advantage of the estate, finds her account surcharged about $230,000 in a considerable part on account of depreciation of securities, absence of vouchers or exclusion of the appellant's testimony as to payments made by her.   It was error to disallow the 10,000 francs on account of the automobile.

The fact that the appellant is now a German subject; that the grandchildren and their father are residents of Germany and that France and Germany are at war, are circumstances which may well be considered in retaining the settlement of the estate in Surrogate's Court.   Although there is difficulty in applying the French law to the various circumstances in this case, if the case is to be concluded here instead of at the natural tribunal in France, it should not be at the prejudice of the appellant.   The payments made by her to her husband and to and for her daughters were made in France; her acts and. neglects took place in France, and it would be unfair to her to have the evidence of such payments controlled by the law of this State if a different rule exists in France.   Here an executrix should produce vouchers for payments; concededly she took

none. It may be that the law of France does not require her
to take them and permits other proof of the payments. The
requirement in our law that an executor must produce vouchers
is a statutory provision; we cannot assume that it exists in
France. The practice is so reasonable, and the contrary posi-
tion would be so unjust, that it is fair to assume, in the absence
of proof that the fact of the interest of the witness goes to the
credibility rather than to the competency of the witness, that
we are led to infer that if this settlement were held in France
the appellant, by her own oath or otherwise, might establish
the alleged payments to her husband, her daughters, and to her
deceased daughter and others. If the trial is kept here the
appellant should have the benefit of the rules of evidence which
would apply in a French court upon the settlement of an estate.
It, therefore, seems that unless the respondents stipulate that
the appellant may prove such expenditures in any manner which
would be competent proof in the settlement of her accounts in
a French court, the matter should be remitted to the French
courts for trial and determination. In case such stipulation is
filed the accounting may proceed to a final determination before
the surrogate. If the case continues before the surrogate an
open commission should issue, directed to a competent person
and returnable at a reasonable time at a reasonable place in
France, where the appellant may submit any evidence she may
desire, with the right to the respondents to offer evidence in
answer thereto. The securities of the estate in America being
on deposit with the Farmers' Loan and Trust Company, to be
held subject to the order of the court, no material injury can
come to the parties interested by such delays as are necessary
for the proper disposition of the case, and the surrogate should
have granted the commission asked for by the appellant. The
decree should be reversed upon the law and the facts, and if the
stipulation is filed within twenty days after the entry of the
order of this court, the matter is remitted to the surrogate for
his further proceedings, saving, however, the evidence, admis-

sions and proceedings already had, so far as consistent herewith. If such stipulation is not filed the evidence and proceedings already had may be remitted to the French court for its action. Costs and disbursements should be awarded to the appellant to be paid from the interests of the respondents in the American estate.

All concurred, Lyon, J., in result, except Cochrane, J., who dissented in opinion in which Howard, J., concurred.

Cochrane, J. (dissenting). — Amedee De Gasquet James, an American citizen born in New Orleans, but a resident of France, married in New York April 21, 1881, the appellant herein, who was also an American citizen. Immediately after their marriage they went to France where they resided until the death of the former which occurred July 28, 1903. They had four children. Three of the children were infants at the time of the death of their father. One has since died, leaving two children who are still infants. The deceased left real and personal property in Europe and also personal property in this country.

The deceased left a last will and testament dated June 10, 1902, and a codicil thereto dated February 14, 1903, whereby he gave to his wife, the appellant herein, all his property, real and personal, in Europe, including, as stated in the will, " the full ownership of all securities without exception by me deposited either in Paris or in London with bankers," except that she was to have the enjoyment during her life of his jewels and diamonds and those of his mother. The will made this additional provision for his children, viz.: " My fortune which is in America shall be divided between my children. I authorize my wife to put this fortune into the hands of one of the big Trust Companies (American)." He designated his wife as executrix of his will. The will and codicil were on the 30th day of July, 1903, duly admitted to probate or established in

France according to the laws of the French republic.    There
is no claim that the appellant ever exercised the authority
given her by the will to put the estate in the hands of a trust
company.

On the 19th day of March, 1904, in the Civil Tribunal of
First Instance of Dinan, being a court in France having juris-
diction in the premises in an action or proceeding instituted in
such court by the appellant and to which all of the legatees
under the will of the deceased were parties, a judgment or de-
cree was duly rendered by said Civil Tribunal of First Instance
wherein it was recited that " the various defendants have sub-
mitted their rights to the court," and said judgment or decree
then declared and adjudged that said will and codicil should
" be carried out according to their form and tenor," and that
delivery should be made to the appellant of the property given
to her in and by said will and codicil.

Such proceedings were also had in the Surrogate's Court of
Ulster county, N. Y., in which county certain property of the
deceased was located, that on the 22d day of March, 1904, the
said will and codicil were duly established by said Surrogate's
Court and ancillary letters testamentary were duly issued to
the appellant.

The appellant never rendered any account of her proceed-
ings either in this country or in France until the year 1912,
when, proceedings having been instituted in the Surrogate's
Court of Ulster county by the legatees under the will to compel
an accounting by her as ancillary executrix, she instituted this
proceeding for a voluntary judicial settlement of her account
as such executrix.

The other parties to the proceeding are the three surviving
children, legatees under the will of her husband, all of whom
appeared in person and by attorney, and the two infant chil-
dren of the deceased daughter who appeared by special guardian.

Objections to the account of the appellant were filed by the
other parties to the proceeding and after a hearing before the

surrogate he surcharged the account of the testatrix with a large amount and directed distribution of the estate to the three children of the deceased and to the general guardian of the two infant children of the deceased daughter.

The main contention of the appellant is that she and her husband not only resided but were domiciled in France; that her property rights pertaining to the estate of her deceased husband are to be determined according to the law of France; that according to such law "legal community," so called, existed between her husband herself and consisted of all the property which she and her husband owned at the time of their marriage or which they acquired thereafter; and that one-half of the community property belonged to the appellant and that her husband had no power to dispose of the same. For the purposes of this appeal none of the foregoing propositions have the effect of impairing the validity of the decree made by the surrogate for the reasons hereafter stated.

*First.* The appellant testified that she took and accepted possession of the property of her husband given her by his will including the real estate which he owned. In re Bayergue v. Ste. Saint Jean Baptiste d'Oleron (Court of Appeals of Pau, Clunet's Journal of International Law, 1887, p. 479) the French court decided as follows: " Parties who have voluntarily carried a will into execution of the alleged defects of which they are unaware, are presumed to have ratified the provisions therein contained. Whereas, the claim of the spouses Bayerque ought to be further rejected because of the voluntary carrying out of the provisions of Romain Bayerque's will, while they were aware of defects which would affect it under the French law, if submitted to said law; Whereas it is imposssible not to see in such acts, the most absolute approval of the carrying out of the will of Romain Bayerque, the remittance of said sum having only been made to him, in conformity with the will, provided the distribution should be made in compliance with the wishes of the testator; that it is thereby shown that

he accepted the mission intrusted to him in regard thereto by
the will, and consequently, ratified by its provisions." The
learned counsel for the appellant in answer to the above
quotes other French law to the effect that if the legacy made
by a husband to his wife where community exists *is not a
residuary* legacy, the widow may at the same time accept the
legacy and maintain her rights in the community. But it is
stated in the authority cited " if the legacy *is residuary* the
widow is obliged to make her option and in accepting the
legacy she implicitly renounces a community." (Dalloz, 1909,
pt. 2, p. 141, n. 2.) This seems to draw a distinction between
a residuary legacy and one which is not a residuary legacy,
and counsel for the appellant contends that her legacy under
the will of her husband is not a residuary legacy. Whether it
would, strictly speaking, be properly characterized as a residu-
ary legacy need not be determined because in its general
features and effect it partakes of the character of a residuary
legacy. The effect of the testamentary provision for the appel-
lant under the will is precisely the same as if the decedent,
instead of employing the language actualy used, had said:
" My fortune which is in America shall be divided between my
children and all the rest, residue and remainder of my estate I
give to my wife."

*Second.* If there be any doubt as to the law of France appli-
cable to this question it has been set at rest by the French court
in reference to this particular case. At the instance of the
appellant that court declared by its judgment or decree in an
action or proceeding to which all the delegates under the will of
the deceased were parties that the various defendants had " sub-
mitted their rights to the court," and that the will and codicil
should " be carried out according to their form and tenor." It
is, therefore, no longer a question of what the French law is,
but the question is what the French courts have declared that
law to be in reference to the will of the deceased, and it has
been determined by the French court that the will shall be

given effect according to its tenor. The appellant suggests that resort was had by her to the French court as a matter of necessity, and that this judgment or decree was merely a formality. If that be so it does not alter the effect of such judgment or decree, and if the question is material, as the appellant insists it is, such judgment or decree should be considered by us as a definite and specific declaration by the courts of France as to the meaning and effect of the testamentary disposition which has been made by the deceased of his estate. By the judgment of the French court the question is *res adjudicata* here.

*Third.* The appellant has offered no evidence of the amount or value of the European property left by her husband or of her own property which she now claims went into the "legal community." The entire theory of her proceeding has been that there was no such "legal community." Her account filed herein was limited only to the American estate of her husband and contained this statement: "The account covers and includes only the American estate of the decedent which has come into my hands under said ancillary letters testamentary." She stated in her answer to the petition of certain of the respondents to compel an accounting that she had in her own right "at least one-half milion dollars unpledged and unincumbered," but there is no more definite statement than that as to the value of her individual estate. Through her counsel and herself she resisted all efforts made by the respondents to ascertain the value of her husband's European property and insisted on limiting the accounting to the American portion of his estate. For these reasons, therefore, it seems clear that the contention of the appellant that the distribution of her husband's estate has not been decreed by the surrogate in accordance with the law of France is untenable.

It is further contended that the accounting was extended beyond its proper limits because the appellant was merely an ancillary executrix in this State and should not have been sub-

jected here to a general accounting. It is well settled that ancillary executors have the same general power in this State as domestic executors so far as personal property is concerned. (Lockwood v. United States Steel Corporation, 209 N. Y. 375; Smith v. Second National Bank, 169 id. 467; Hopper v. Hopper, 125 id. 400, 404.) That would seem to be more particularly true where as in this case the ancillary executor and the principal executor are one and the same person. In Lockwood v. United States Steel Corporation (*supra*) it was held: "Ancillary administration in this State is regulated by statute and an ancillary executor or administrator has the same general powers as a domestic executor or administrator except in disposing of the decedent's real property for the payment of his debts and funeral expenses." And in Hopper v. Hopper (*supra*) it was written: "The Code provides (§ 2702)* that all the provisions of its eighteenth chapter relating generally to Surrogates' Courts and proceedings therein, and to the rights, powers, duties and liabilities of an executor or administrator, shall, with some minor exceptions, apply to a person to whom ancillary letters are granted, and thus puts him upon a level so far as his official character is concerned, with the ordinary executors appointed by our courts." Whether our courts will exercise the power they thus possess and decree distribution of the assets collected in this jurisdiction under ancillary letters granted by them or will remit the disposition thereof to the courts of the testator's domicile is a question of discretion to be determined with reference to the facts of each particular case. (Despard v. Churchill, 53 N. Y. 192; Matter of Dunn, 39 App. Div. 510, 513; Matter of Hughes, 95 N. Y. 55.) If the appellant had at the institution of this proceeding taken the position that the Surrogate's Court should not exercise jurisdiction in respect to her proceedings and should leave the

---

* Now Code Civ. Pro., § 2636, as amd. and renum. by Laws of 1914, ch. 443.— [REP.

matter of distribution to the foreign country it may well be that the learned surrogate would have sustained her contention. But on the contrary she invoked the jurisdiction of the Surrogate's Court. The respondents were legally entitled to an accounting by her as ancillary executrix and that was all they asked. She instituted an entirely independent proceeding and filed her petition for a voluntary judicial settlement of her account and in her account as filed she credited herself with moneys expended in Europe including testamentary and other expenses incurred there and payments made there to the legatees and for their benefit. The proceeding initiated by her lacked none of the features of a general accounting except that she insisted on not disclosing what property she had received in Europe. The determination of the surrogate has not gone beyond any feature thus injected by the appellant herself into the proceeding which she instituted. He has only adjusted items which she has herself presented in reduction of her own liability. Having filed her account the proceeding was delayed about a year during the absence of the appellant from this country. The respondents in the meantime came to this country, filed objections to the account, were personally examined as witnesses before the surrogate in support of their objections, and were subjected to the delay and expense occasioned by the general accounting such as the appellant herself had instituted. It is true that about a year from the time when her account was filed and after the respondents had introduced all of their testimony in opposition thereto the appellant endeavored by motion to limit the account to the assets of the estate and to her transactions within the State of New York. But as she had herself invoked the power of the surrogate and had set in motion the machinery of the court for a general accounting and had thereby occasioned delay and expense, it was not an improper exercise of discretion for the surrogate then to continue and conclude the proceeding upon the basis which she had initiated. All of the parties were

before the court and the interests of all were promoted by decreeing distribution rather than by remitting the proceeds to France for that purpose. The latter course would have involved merely more expense.

The surrogate refused to allow the appellant commissions. The estate was practically unadministered for a period of more than eight years. The preponderance of evidence shows and the surrogate has so found that the respondents were repeatedly demanding an accounting. During a portion of the time some of them were infants and some of them are infants even now. The estate having been left to take care of itself, and losses having occurred as the result of such want of administration, it is difficult to see how commissions have been earned.

The findings of the surrogate and his directions seem to rest on sufficient evidence except in one particular. The appellant has credited herself and charged her son with 20,000 francs for an automobile purchased by her for him after he was twenty-one years old. After her son had used the automobile for some time he sold it to the appellant for 10,000 francs, which she has not paid. The surrogate reduced the item of 20,000 francs in her account to 10,000 francs, as we think erroneously. While the appellant owes her son 10,000 francs, it is not within the province of the court to adjust that indebtedness on this accounting, and the decree should be modified accordingly.

The decree should be modified in respect to the item for automobile, as indicated in the opinion, and as so modified affirmed.

Howard, J., concurred.

Motions to dismiss appeal denied. Decree reversed on law and facts and order directed as per opinion of Kellogg, P. J. Order to be settled by Kellogg, P. J. The court disapproves of the findings of fact numbered 8, 9, 16, 17, 18, 19, 20, 21, 22, 23, 24, 38, 39, 40, 41.